BAY BOTTLED GAS COMPANY v. DEPARTMENT
OF REVENUE.

1. TAXATION—USE TAX—EXEMPTIONS—CONTAINERS FOR LIQUEFIED PETROLEUM GAS—INDUSTRIAL PROCESSING—PREPARATION OF RAW MATERIAL FOR MARKET.

Use of storage tanks, cylinder containers and handling systems installed in homes of customers, designed to maintain propane gas in a liquefied condition while in owner's possession until sale and delivery to its customers and which were used to regulate the pressure to the end that vaporization might take place as a natural process and make the product available for heating, cooking and other purposes constituted a use of property taxable under the use tax act, since such equipment was not used in industrial processing, there being no preparation of a raw material for the market (CL 1948, § 205.94[g]).

2. SAME—USE TAX—INDUSTRIAL PROCESSING.

The term "industrial processing," as used in the use tax act, is not intended to apply to processing so as to exempt property used in processing from tax, where there is no subsequent sale (CL 1948, § 205.94[g]).

3. SAME—EXEMPTION—CONSTRUCTION OF STATUTES.

Statutory provisions for exempting property from taxation must be strictly construed in favor of the State (CL 1948, § 205.94 [g]).

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 47 Am Jur, Sales and Use Taxes §§ 54–56.
[1–4] Constitutionality, construction, and application of general use tax or other compensating tax designed to complement State sales tax. 129 ALR 222; 153 ALR 609.

4. SAME—INDUSTRIAL PROCESSING—EXEMPTIONS FROM USE TAX.
The distribution of gas is not manufacturing or "industrial processing" as that term is used in exemption provision of the use tax act (CL 1948, § 205.94[g]).

Appeal from Court of Claims; Nebel (Richard W.), J., presiding. Submitted October 13, 1955. (Docket No. 19, Calendar No. 46,564.) Decided December 28, 1955.

Bay Bottled Gas Company, a Michigan corporation, filed its claim against the Michigan Department of Revenue for refund of use tax paid under protest, claiming industrial processing exemption on liquefied petroleum gas. Judgment for defendant. Plaintiff appeals. Affirmed.

*Harold W. Davis* and *Iverson & Allin,* for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *T. Carl Holbrook, Philip Wuntner, Maurice Barbour* and *William D. Dexter,* Assistants Attorney General, for defendant.

CARR, C. J. For several years past plaintiff has been engaged in the sale and distribution of liquefied petroleum gas. Said gas is furnished by it under written contracts with its customers, most of whom are home owners, and is used for heating, cooking, refrigeration, and perhaps other purposes. In connection with its operations plaintiff uses storage tanks, cylinders and so-called "handling systems," which systems are installed for the use of purchasers of the gas.

Claiming that the use of the equipment referred to rendered plaintiff liable to assessments under the

use tax act,* the defendant imposed such tax in the sum of $2,494.42, together with interest, for the period from November 24, 1947, to and including December 21, 1951. Plaintiff thereupon appealed to the State board of tax appeals which upheld the assessment as made by defendant. The amount of the tax was paid under protest and plaintiff brought action in the court of claims for recovery thereof. Judgment having been rendered against it, it has appealed to this Court.

On the hearing before the State board of tax appeals, and also before the trial court, the principal facts were stipulated. Plaintiff obtained its liquefied propane gas from a refinery, delivery being made in railroad tank cars. Sufficient pressure was maintained to prevent the liquid from vaporizing. Its boiling point is said to be 44°F. Plaintiff transferred it from the tank cars to 18,000-gallon storage tanks which it maintained for that purpose. It was then pumped in a liquefied state into steel cylinders designed to hold either 20 pounds or 100 pounds of the liquid. The containers were adapted specifically to maintain the necessary pressure.

Pursuant to its contract with each consumer, plaintiff installed cylinder containers of the liquefied gas, usually 2 in number, with certain regulating and control equipment attached to inlet lines within the dwelling or other structure, on the premises of each consumer. Such equipment was not affixed in a manner that resulted in its becoming a part of the realty, and under the contract it remained plaintiff's property. A combination regulator and safety device was attached to the top of the cylinder, enclosed by a metal protective cover. Following the

---

* PA 1937, No 94, as amended (CL 1948 and CLS 1954, § 205.91 *et seq.* [Stat Ann 1950 Rev and 1953 Cum Supp § 7.555(1) *et seq.*]). PA 1955, No 235, amendments to the act do not affect the question at issue in this case.

installation plaintiff's representative released a so-called "throw over" valve. This resulted· in a reduction in pressure and the consequent vaporization of a portion of the liquid. The gas thus vaporized was ready for the use of the consumer. Pursuant to the contract each cylinder, when emptied, was replaced by plaintiff.

Appellant claims that the storage tanks, steel cylinders, regulators, valves, fittings and incidental equipment were used by it in "industrial processing," and that such use was not subject to the tax imposed under the statute cited. Section 4 of the act (CL 1948, § 205.94 [Stat Ann 1947 Cum Supp § 7.555 (4)]) grants exemptions as to certain classes of property. Reliance is placed on subdivision (g) thereof, which exempts:

"Property sold to a buyer for consumption or use in industrial processing or agricultural producing."

The question at issue is whether the property above mentioned was used, during the period for which the tax was assessed, in industrial processing of the liquefied propane gas sold and distributed by plaintiff. The use of such equipment obviously did not result in any change in the character of the product handled by plaintiff. The storage tanks and cylinder containers were designed to maintain the propane gas in a liquefied condition while in plaintiff's possession and until sale and delivery to its customers. The so-called "handling systems" installed in the homes of customers were used to regulate the pressure to the end that vaporization might take place as a natural process, thus making the product available for heating, cooking and other purposes. It should be noted in this connection that the cylinders and other equipment placed in the home of the consumer remained the property of the plaintiff, being loaned or leased to the customer, who,

it appears, gave some form of security for its proper maintenance and return on demand.

Appellant relies on the decision of this Court in *Michigan Allied Dairy Ass'n* v. *State Board of Tax Administration,* 302 Mich 643, in which it was held that treating raw milk in such manner as to destroy bacteria therein, thereby protecting it against contamination and rendering it marketable, constituted industrial processing, and that the use of cans and bottles in the course of the operation was not subject to the tax imposed by the statute. The Court found that the taxpayer was entitled to the exemption under the provisions of section 4(g), above quoted in part. The opinion in the case pointed out that milk is not marketable until properly protected against contamination and deterioration for the protection of the consumer. The decision of the supreme court of Arizona in *Moore* v. *Farmers Mutual Manufacturing & Ginning Co.,* 51 Ariz 378, 382 (77 P2d 209), was cited with approval. The court there referred to the definition of the term "process" given in Webster's New International Dictionary as follows:

"to subject (especially raw material) to a process of manufacturing, development, preparation for the market, et cetera; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking."

It was further stated with reference to such definition that:

"It will be seen that the essential portion of the definition is to 'prepare raw material * * * for the market.'"

Tested by the definition approved in the *Michigan Allied Dairy Ass'n Case, supra,* the conclusion fol-

lows that the methods used by plaintiff to regulate the pressure of liquid propane gas did not constitute industrial processing. Its primary purpose was not to render it marketable, but to subject it to such conditions as to pressure and temperature as would maintain it in liquid form prior to the time of use.

In *Kress* v. *Department of Revenue,* 322 Mich 590, the question at issue was whether certain water softeners, owned by plaintiff Kress and rented to patrons for installation and use in their homes or business places, were used in industrial processing. Such patrons included some industrial users although the greater number were householders. With reference to the softeners placed in residences, it was held that the softening of the water did not constitute industrial processing within the meaning of the statute, inasmuch as the operation was not conducted in order to condition the water for a later sale. The holding in the case was summarized as follows:

"As used in the use tax act, the term 'industrial processing' is not intended to apply to processing so as to exempt property used in processing from tax, where there is no subsequent sale (PA 1937, No 94, § 4, subd [g], as amended by PA 1945, No 180)." (Syllabus 3.)

In *Suburban Propane Gas Corporation* v. *Tawes,* 205 Md 83 (106 A2d 119), it was held that appliances used by plaintiff for the purpose of reducing the pressure on liquid propane in its containers on consumers' premises, in order to produce gaseous propane for such consumers, did not constitute manufacturing within the meaning of the statute, and that, in consequence, plaintiff was liable to the use tax specified by the Maryland statute. In reaching such conclusion the court cited, and quoted from, other decisions relating to the subject, and drew an analogy between the result of lowering the pres-

sure on the liquid propane, thereby enabling it to
assume a gaseous form, with the passage of gaso-
line through the carburetor of a motor vehicle.
While the Maryland statute is not identical in
phrasing with that of Michigan, we think the line
of reasoning followed in reaching the conclusion
indicated is significant. It may be noted, also, that
the court pointed out the general rule with reference
to exemptions from taxation, that is, that statutory
provisions providing for such exemptions must be
strictly construed in favor of the State.

In *Peoples Gas & Electric Co.* v. *State Tax Com-
mission,* 238 Iowa 1369 (28 NW2d 799), the question
at issue was whether the plaintiff was exempt from
the payment of the use tax imposed by the Iowa
statute on certain equipment used by it in connec-
tion with the transmission of electrical energy and
with the furnishing of gas to consumers. Exemption
was claimed on the ground that the property was
used in "processing" within the meaning of the
term as used in the exemption clause of the act.
Defendant appealed from an adverse decision. It
was the claim of the plaintiff that the statutory
provision in question should not be construed as an
exemption but, rather, as indicating that the legis-
lature did not intend a coverage of the property so
used. In other words it was asserted that there was
a want of coverage rather than an exemption there-
from. It may be noted that a similar argument is
suggested by counsel in the case at bar. The Iowa
court, considering prior decisions relating to the
issue, held against the contention of the plaintiff,
concluding that the legislature intended that the tax
should be imposed generally but that certain exemp-
tions therefrom, as specified in subsequent sections,
should be granted.

The Iowa decision cited is in accord with the
Michigan cases construing the use tax act of this

State. With reference to the operation of plaintiffs' gas system, it was said, in part (pp 1386, 1387):

"Plaintiffs do not manufacture gas but own and operate a system of gas mains and pipes through which they distribute natural gas to numerous customers. Plaintiffs purchase this natural gas from a company which operates a pipe line through the territory. At the stations where the gas is delivered to plaintiffs' main by said pipe line, plaintiffs inject into it an odorant at the rate of about one pound per million cubic feet of gas. Plaintiffs receive the gas at relatively high pressures, which are successively reduced at various points in the transmission and distribution mains and pipes. It is delivered to customers at relatively low pressures. In this respect the method of distribution is similar to that used in electric distribution systems. Likewise, it is employed because it is the most practical method of distribution.

"Various authorities hold the distribution of gas is not manufacturing. *Covington Gaslight Co.* v. *City of Covington,* 84 Ky 94 (8 Ky L Rep 442); *Consolidated Gas Co.* v. *Mayor and City Council of Baltimore,* 62 Md 588 (50 Am Rep 237); *State, ex rel. Minneapolis Gaslight Co.,* v. *Minnesota Tax Commission,* 132 Minn 419 (157 NW 638). Plaintiffs do not contend otherwise. They contend the gas distributing system is directly used in servicing the gas.

"Our conclusion that the poles, wires, transformers, et cetera, do not service the electric energy is applicable to this contention and results in a holding that the main pipes, valves, regulators, et cetera, do not service the gas within the meaning of the processing exception. Hence, such materials and equipment were not exempt."

See, also, *Kennedy* v. *State Board of Assessment & Review,* 224 Iowa 405 (276 NW 205); *Huron Fish Co.* v. *Glander, Tax Commr.,* 146 Ohio St 631 (67 NE 2d 546). In the last case cited it was held that:

"Under the provisions of sections 5546–1 and 5546–25, General Code [Page, 1945], the retail sale of tangible personal property is exempt from sales and use taxes if such property is used directly in the production of tangible personal property for sale by processing." (Syllabus 1.)

" 'Processing' is the refining, development, preparation or converting of material (especially that in a raw state) into marketable form." (Syllabus 2.)

We are in accord with the conclusion reached by the circuit judge who heard this case in the court of claims. The equipment purchased and maintained by plaintiff to enable it to store and market liquefied propane gas, and to regulate the pressure thereof, was not used in industrial processing and, in consequence, plaintiff was not entitled to the exemption set forth in section 4(g) of the statute. The judgment is affirmed, with costs to defendant.

BUTZEL, SMITH, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.