

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

September 25, 1985

Honorable Neal Birmingham
District Attorney
P. O. Box 555
Linden, Texas    75563

Opinion No.   JM-354

Re: Whether the exception of section 5(b), article 6701d-11, V.T.C.S., applies to pulpwood or logs being transported to a mill

Dear Mr. Birmingham:

You request an interpretation of the statutory provision which creates a forestry exception in article 6701d-11, section 5(b), V.T.C.S.  Specifically, you ask whether the exception applies to the hauling of logs or pulpwood from a wood yard to a lumber mill or to a paper mill.  Section 5(a) of article 6701d-11 makes it unlawful to operate on the public highways a commercial motor vehicle, truck-tractor, trailer, or semitrailer having a weight in excess of the specified weight limitations.  In 1983, the legislature added section 5(b), which further provides that

> (b) No person shall load, or cause to be loaded, a vehicle for operation on the public highways of this state with the intent to violate the weight limitations in Subsection (a) of this section.  Intent to violate those limitations is presumed if the loaded vehicle exceeds the applicable gross vehicular weight limit by 15 percent or more.  <u>This subsection does not apply to the loading or causing to be loaded of an agricultural or a forestry commodity prior to the processing of the commodity</u>.  (Emphasis added).

Your question is not whether the operator of an overloaded truck violates article 6701d-11, but whether the owner or operator of a wood yard has loaded or caused to be loaded a vehicle for operation on the public highways in violation of section 5(b).

You advise us that wood, after being cut in the forest, is first transported to a wood yard and then transported from the wood yard to a mill.  The wood may be transported to a mill on the same truck that hauled it to the wood yard without being unloaded and reloaded at the wood yard.  It may be unloaded, stacked, and subsequently reloaded for

hauling to the mill.  It may be unloaded, stacked, and subsequently, at the option of the wood yard, sold to a saw mill for lumber or cut into lengths suitable for pulpwood and hauled to a paper mill.  Even when there is no provable alteration of the wood itself at the wood yard, there may be a change of ownership.  The issue in question is whether the logs or pulpwood leaving a wood yard have been processed within the meaning of the statute so that the forestry exception no longer applies, or whether they remain "a forestry commodity prior to the processing of the commodity," in which case the owner or operator of the wood yard is protected from criminal charges under section 5(b) of article 6701d-11.  We conclude that the legislature did not intend the forestry exception to apply to a vehicle hauling logs or pulpwood from a wood yard to a lumber mill or paper mill.

What constitutes "processing" is a complex question.  See Commonwealth v. Babcock Lumber Company, 272 A.2 522, 526 (Pa. 1971).  The Texas Legislature did not define "processing," and we have not found it defined by a court in this context.  It is well settled that an ambiguous statute must be construed consistent with legislative intent.  Newsom v. State, 372 S.W.2d 681, 683 (Tex. Crim. App. 1963).  We assume that the legislature intends words used in a statute to be understood in their ordinary sense except where they are given a different meaning in the act.  See Markowsky v. Newman, 136 S.W.2d 808 (Tex. 1940); Attorney General Opinion JM-106 (1983).  There are times when it is necessary to consult a dictionary to ascertain the appropriate meaning of a word in a statute.  See Board of Insurance Commissioners v. Duncan, 174 S.W.2d 326, 328 (Tex. Civ. App. - Amarillo 1943, writ ref'd); Attorney General Opinion H-1277 (1978).

According to Black's Law Dictionary at page 1084 (5th ed. 1979), one meaning of process is "to prepare for market or to convert into marketable form."  Supreme courts in other states have frequently found the term, in analogous contexts in other statutes, to mean the preparation of a product for market or conversion of a product into marketable form.  In Moore v. Farmers Mutual Mfg. & Ginning Co., 77 P.2d 209, 211 (Ariz. 1938), the Supreme Court of Arizona stated the following:

> The word 'process' is given several definitions by Webster's New International Dictionary, the standard authority for the meaning of the words of the English language.  The one which obviously applies to an operation like the ginning of cotton is as follows:  'to subject (especially raw material) to a process of manufacturing, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting

and repacking.' It will be seen that the essential portion of the definition is to 'prepare raw material . . . for the market. . . .'

See also State v. Four States Drilling Co., 177 So.2d 828, 831 (Ala. 1965) (quoting the same definition from Webster's New International Dictionary); Employment Security Commission of Arizona v. Bruce Church, Inc., 507 P.2d 108, 111 (Ariz. 1973) (cooling of lettuce is incident to preparation for market though it does not change its nature or form); Bay Bottled Gas Co. v. Michigan Department of Revenue, 74 N.W.2d 37, 40 (Mich. 1955) (processing is refining, development, preparation, or converting of material, especially in a raw state, into marketable form); Southern Natural Gas Co. v. State, 73 So.2d 731, 735 (Ala. 1953) (process is synonymous with preparation for market and conversion into marketable form); Colbert Mill & Feed Co. v. Oklahoma Tax Commission, 109 P.2d 504, 506 (Okla. 1941) (definition of process quoted from Webster's New International Dictionary shows it is synonymous with preparation for the market).

Your inquiry relates to logs and pulpwood leaving a wood yard. Logs and pulpwood do not have fixed definitions in the law, but clearly they are forestry commodities. Decisions of the supreme courts of other states have found that a log is the trunk of a tree, cut down and stripped of its branches, or the trunk of a tree cut into different lengths. See Bishop v. DuBose, 113 S.E.2d 309, 313 (N.C. 1960); State v. Addington, 27 S.E. 988, 990 (N.C. 1897). Other decisions have described pulpwood as wood logs, peeled or unpeeled, usually cut in lengths suitable for manufacturing into wood pulp, which commonly is used in making paper. Dead River Co. v. Assessors of Houlton, 103 A.2d 123, 129 (Me. 1953). Cf. State v. International Paper Company, 163 So.2d 507 (Ala. 1964) (wood chips not same as pulpwood). You indicate that the pulpwood in question is a tree that has been cut down, trimmed, and cut into five to seven foot lengths. Even if wood is transported to a mill on the same truck without its being unloaded, it has been visually inspected and sorted and determined to be in suitable condition for transportation to a mill.

Recently, a Texas Court of Appeals determined the meaning of timber as used in a motor carrier certificate of convenience and necessity issued by the Texas Railroad Commission. The court stated that

We hold that the word 'timber', as used in appellant's certificate . . . includes only trees not worked upon beyond their being felled and subjected to such other processing as may be reasonably necessary to facilitate their transportation by motor carrier, for example, removing limbs from the fallen trees and sawing the logs to

lengths suitable for transport by motor carrier.
(Emphasis added).

Kinner Transp. & Enterprises, Inc. v. State, 644 S.W.2d 69, 70 (Tex.
App. - Austin 1982, writ ref'd n.r.e.). The court found that "timber"
as used in the certificate has a meaning virtually synonymous with
logs.

By the time logs and pulpwood leave a wood yard, they are
products that have been prepared for market or converted into market-
able form by the trimming of branches, by sorting, by reloading, or by
cutting into appropriate lengths, and may already have entered into
channels of commerce.

It is an established rule of construction that an exemption from
the general terms of a statute is strictly construed. See Attorney
General Opinion M-507 (1969). It is our opinion that, in the event of
a judicial interpretation of the exception for a forestry commodity
prior to the processing of the commodity, the exception would not be
extended to the hauling of logs or pulpwood from a wood yard under the
facts presented to us.

In addition, it is our opinion that if the legislature had
intended motor vehicles loaded with logs or pulpwood to be exempt from
the provisions of article 6701d-11, section 5(b), the legislature
would have expressly so provided as it did in article 6701d-11,
section 6(b), when it exempted motor vehicles loaded with timber or
pulpwood from the provisions of subdivision 1 of section 6 of the same
statute. The latter provision requires the operator or owner of a
motor vehicle to unload the vehicle to the extent necessary to reduce
its weight to the lawful maximum before further operation of an
overweight vehicle on the public road, unless the load consists of
livestock. Subdivision 6 of section 6 was enacted six years prior to
the enactment of section 5(b) and provides that

> Notwithstanding Subdivision 1 of Section 6 of
> this Act, the operator or the owner of a motor
> vehicle loaded with timber or pulp wood or agri-
> cultural products in their natural state being
> transported from the place of production to the
> place of market or first processing, the operator
> or owner of a vehicle crossing a highway as
> provided by Section 5-1/3 of this Act, or the
> operator or owner of a vehicle crossing a highway
> as provided by Section 5-2/3 of this Act, is not
> required to unload any portion of his load.
> (Emphasis added).

Unlike the exception in section 5(b), the exemption to subdivision 1 of section 6 expressly applies to a vehicle loaded with timber or pulpwood prior to any processing of the timber or pulpwood.

This opinion is limited to your request for a statutory interpretation and does not address any additional issues.

## S U M M A R Y

The statutory exception in section 5(b) of article 6701d-11, V.T.C.S., for a forestry commodity prior to the processing of the commodity does not apply to a vehicle hauling logs or pulpwood from a wood yard to a lumber mill or paper mill.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Nancy Sutton
Sarah Woelk