# STATE OF MICHIGAN

# COURT OF APPEALS

---

CONSUMERS ENERGY COMPANY, f/k/a
CONSUMERS POWER CO,

       Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY, STATE OF
MICHIGAN,

       Defendant-Appellee.

UNPUBLISHED
October 16, 2014

No. 316038
Court of Claims
LC No. 10-69-MT

---

CONSUMERS ENERGY COMPANY, f/k/a
CONSUMERS POWER CO,

       Plaintiff-Appellee,

v

DEPARTMENT OF TREASURY,

       Defendant-Appellant.

No. 316131
Court of Claims
LC No. 10-69-MT

---

Before: SAAD, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

In these consolidated cases, both plaintiff and defendant appeal the ruling of the Court of Claims on whether plaintiff's electrical distribution equipment and natural-gas distribution equipment are subject to the industrial-processing exemption to the use tax under MCL 205.94*o*. For the reasons stated below, we affirm in part and reverse in part, and remand for proceedings consistent with this opinion. We note at the outset that the recent decision of our Court in

-1-

*Detroit Edison Co v Dep't of Treasury*[1] provides the basis and rationale for the major part of this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Consumers Energy ("Consumers") is a utility company that provides natural gas and electricity to business and residential customers. To facilitate the safe distribution and use of these commodities, Consumers owns and operates transmission lines, substations, compressor stations, and transformers ("distribution equipment") throughout the state. This distribution equipment transmits electricity and natural gas from generation plants to the customer's home or business. It also modifies the electricity and natural gas generated at the plants to make them usable and safe for business and residential customers.

As part of its natural-gas operations, Consumers provides an appliance-service plan ("ASP") for its natural-gas customers. Under the ASP, a customer pays a flat fee in their annual or monthly gas bill as a form of insurance in the event that their natural-gas-using appliances break down and require repairs. Consumers, or a third-party contractor, will then make the repairs. The third-party contractors are responsible for purchasing the tools, materials, parts, and supplies they need for their repair jobs. Consumers then reimburses the third-party contractor for its work and expenses (including sales and use taxes paid on the necessary repair equipment by the contractors).

Defendant Department of Treasury ("Treasury") conducted an audit of Consumers for the period from October 1, 1997 to December 31, 2004. It determined that Consumers' electrical and natural gas distribution equipment, and the ASP repair-related items, were subject to the Use Tax per MCL 205.91, *et seq*. After an informal conference with Consumers in June 2006, in which Treasury offered a detailed explanation of its determinations, Treasury levied tax on the distribution-related equipment[2] of $21,219,510. Consumers paid this amount, plus $13,403,971 in interest, under protest on July 30, 2010, and brought these actions in the Court of Claims.

At trial, Consumers moved for summary disposition under MCR 2.116(C)(10). It presented exhaustive expert evidence that, as originally generated, electricity and natural gas are neither safe nor usable, and that both are modified considerably by its distribution equipment as they are transported to customers' homes and businesses. Because the distribution infrastructure converts electricity and natural gas from a form that is unsafe and unusable to one that is both safe and usable, Consumers argued that the equipment is subject to the industrial-processing exemption to the Use Tax under MCL 205.94*o*. It also asserted that it did not purchase, store, or use any of the equipment used by the third-party contractors as part of the ASP program, and that the contractors had paid sales tax on the equipment when they purchased it—precluding application of the use tax under MCL 205.94(1).

---

[1] 303 Mich App 612; 844 NW2d 198 (2014), lv gtd ___ Mich ___ (Docket No. 148753).

[2] To be clear, this case involves a Use Tax levied on Consumers' electrical and natural-gas distribution equipment—*not* the electricity or natural gas itself.

Treasury responded by stating that Consumers' electrical distribution equipment does not qualify for the industrial-processing exemption because Consumers' equipment was actually transporting "electrical energy"—not "electricity." Though Treasury agreed that "tangible personal property" involved in the distribution of "electricity" was not subject to the Use Tax as part of the industrial-processing exemption under MCL 205.94*o*, it argued that "tangible personal property" involved in the distribution of "electrical energy" *had* been subject to the tax for many years, pursuant to an administrative rule, Michigan Administrative Code Rule 205.115, and that this rule did not contradict MCL 205.94*o*. Furthermore, Treasury argued, the Legislature's separation of electricity regulation into distinct stages (generation, transmission, and distribution) in 141 PA 2000 and 390 PA 2000 mandated that equipment used in the transmission and distribution of electricity—i.e., equipment outside of the generation plants—was subject to the Use Tax.

On the issue of Consumers' natural-gas distribution equipment, Treasury questioned whether the equipment actually modified the natural gas at all, as opposed to simply transporting it in an unmodified state from the power plant to the customers' home or business. Treasury further claimed that Consumers owed use tax on the repair-related items purchased by third-party contractors under the ASP plans, because Consumers "purchased" the repair-related items by reimbursing the third-party contractor for their cost.

The Court of Claims held that: (1) Consumers' electrical distribution equipment was not eligible for the industrial-processing exemption because of Michigan Administrative Code Rules 205.90 and 205.115; and (2) Consumers' natural-gas distribution equipment was eligible for the industrial-processing exemption because it modified and changed the nature of the natural gas, and made it safe for customer use. The court also ruled that Consumers could not be liable for Use Tax levied on repair-related items purchased by third-party contractors under the ASP plans. Accordingly, it granted: (1) Treasury's motion for summary disposition per MCR 2.116(I)(2) as to the electricity-related issues; and (2) Consumers' motion for summary disposition per MCR 2.116(C)(10) as to the natural-gas related issues. Both sides appealed the ruling to our Court,[3] and make the same arguments on appeal.

## II. STANDARD OF REVIEW

## A. MOTIONS FOR SUMMARY DISPOSITION

"This Court reviews de novo a ruling by the Court of Claims on a motion for summary disposition in a case involving [the Use Tax Act]. Issues relating to the construction of the [Use Tax Act] are likewise reviewed de novo on appeal." *Detroit Edison Co v Dep't of Treasury*, 303 Mich App 612, 619; 844 NW2d 198 (2014) (internal citations omitted), lv gtd ___ Mich ___ (Docket No. 148753).

---

[3] Our Court consolidated the appeals for administrative reasons. *Consumers Energy v Dep't of Treasury*, unpublished order of the Court of Appeals, May 30, 2013 (Docket Nos. 316038; 316131).

"In reviewing a motion under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact." *Gray v Chrostowski*, 298 Mich App 769, 774; 828 NW2d 435 (2012). "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

## B.  STATUTORY INTERPRETATION

A court's "goal in interpreting a statute is to give effect to the Legislature's intent." *Malpass v Dep't of Treasury*, 494 Mich 237, 248–249; 833 NW2d 272 (2013) (citations omitted). "When ascertaining the Legislature's intent, a reviewing court should focus first on the plain language of the statute in question, and when the language of the statute is unambiguous, it must be enforced as written." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc,* 494 Mich 543, 560, 837 NW2d 244 (2013) (citation omitted). Though they are entitled to "respectful consideration"[4] and should not be overruled without "cogent reasons,"[5] agency interpretations of a statute "are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117–118; 754 NW2d 259 (2008).

"Tax exemptions under the [Use Tax Act] and in general are disfavored, and the burden of proving an entitlement to an exemption is on the party claiming the right to the exemption." *Detroit Edison Co*, 303 Mich App at 620. Furthermore, exemptions are "strictly construed against the taxpayer." *Guardian Industries Corp v Dep't of Treasury*, 243 Mich App 244, 249; 621 NW2d 450 (2000). This is because taxes are intended to apply to all relevant taxpayers, and tax exemptions confer a special status that is the "antithesis of tax equality." *Id*. Tax exemptions are not inferred from statutory language. *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 474; 838 NW2d 736 (2013).

## III.  ANALYSIS

## A.  ELECTRICAL DISTRIBUTION EQUIPMENT

The Use Tax levies a tax on "every person"[6] in Michigan for "the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the price of

---

[4] *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103–104; 754 NW2d 259 (2008).

[5] *Id*.

[6] Under the Act, " '[p]erson' means an individual, firm, partnership, joint venture, association, social club, fraternal organization, municipal or private corporation whether or not organized for profit, company, limited liability company, estate, trust, receiver, trustee, syndicate, the United States, this state, county, or any other group or combination acting as a unit, and the plural as

property or services specified in [MCL 205.93a or 205.93b]." MCL 205.93(1). Under the statute, "tangible personal property" means:

> personal property that can be seen, weighed, measured, felt, or touched or that is in any other manner perceptible to the senses and includes electricity, water, gas, steam, and prewritten computer software. [MCL 205.92(k).][7]

There are a number of exemptions to the Use Tax, and, among other things, it does not apply to "property sold after March 30, 1999"[8] that "an industrial processor"[9] uses or consumes "in industrial processing." MCL 205.94o(1)(a). "Industrial processing" is defined as:

---

well as the singular number, unless the intention to give a more limited meaning is disclosed by the context." MCL 205.92(a).

[7] Our Court's observations on the legislative background of MCL 205.92(k) in *Detroit Edison* apply in the same manner to these cases:

> . . . pursuant to 2004 PA 172 [which added new language to the definition of "tangible personal property"], the Legislature separately provided that "in the same manner as tangible personal property is taxed under [the UTA]," a use tax is imposed on, "[t]he transmission and distribution of electricity, whether the electricity is purchased from the delivering utility or from another provider, if the sale is made to the consumer or user of the electricity for consumption or use rather than for resale." MCL 205.93a(1)(e). . . . Further, it is clear that the Legislature was focused on the taxation of *electricity* and its transmission and distribution, not the "industrial processing" exemption. [*Detroit Edison*, 303 Mich App at 625 n 5 (emphasis added).]

[8] There are two versions of the industrial-processing exemption that apply to the time period relevant to this suit. From October 1, 1997 to March 30, 1999, the older version of the industrial-processing exemption, MCL 205.94(g)(*i*), was in force. From March 30, 1999 onward, the industrial-processing exemption is contained in MCL 205.94o. Though the parties essentially agreed at the informal conference in 2006 to apply MCL 205.94o to the entire time period at issue, it is the Court, not the parties, that determines what law applies when.

Here, however, the distinction between the two statutes is of little import, and our analysis of the industrial-processing exemption is the same under either version of the law. MCL 205.94(g)(*i*) defined "industrial processor" in a similar way to MCL 205.94o(7)(a):

> As used in this subdivision, "industrial processor" means a person who transforms, alters, or modifies tangible personal property by changing the form, composition, or character of the property for ultimate sale at retail or sale to another industrial processor to be further processed for ultimate sale at retail. [MCL 205.94(g)(*i*); see also *Elias Bros Restaurants, Inc v Dep't of Treasury*, 452 Mich 144, 149; 549 NW2d 837 (1999).]

Again, the electrical and natural-gas distribution equipment on which the Use Tax was levied was used by Consumers to "transform[], alter[], or modify[] tangible personal property"—i.e.,

the activity of converting or conditioning tangible personal property by changing the form, composition, quality, combination, or character of the property for ultimate sale at retail or for use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state. Industrial processing begins when tangible personal property begins movement from raw materials storage to begin industrial processing and ends when finished goods first come to rest in finished goods inventory storage. [MCL 205.94*o*(7)(a).]

The definition of "industrial processing" thus makes the meaning of "tangible personal property" doubly important for purposes of interpreting the industrial-processing exemption under MCL 205.94*o*.[10] First, the Use Tax is only levied on "tangible personal property." MCL 205.93(1). Second, the industrial-processing exemption can only be granted to "tangible personal property" that is engaged in the "converting or conditioning" of "tangible personal property." MCL 205.94*o*(7)(a).

As noted, the term "tangible personal property" includes "electricity." MCL 205.92(k). Therefore, if an "industrial processor" uses its distribution equipment[11] to change "the form, composition, quality, combination, or character" of electricity before it reaches the consumer, the distribution equipment is involved in industrial processing, and thus exempt from the Use Tax under MCL 205.94*o*. *Detroit Edison*, 303 Mich App at 627.

Here, it is undisputed that Consumers is an "industrial processor." It is also undisputed that its electrical distribution equipment is "tangible personal property," in that it "can be seen . . . felt, or touched." MCL 205.92(k). Consumers presented exhaustive evidence at trial[12]— evidence that Treasury did not effectively contest—that its electrical distribution equipment changes "the form, composition, quality, combination, or character" of electricity *before* it

---

electricity and natural gas. Accordingly, and for the reasons stated in the body of our opinion, Consumers' electrical and natural-gas distribution equipment is also exempt from the Use Tax under the older version of the industrial-processing exemption, MCL 205.94(g)(*i*).

[9] MCL 205.94*o*(7)(b) defines "industrial processor" as: a "person who performs the activity of converting or conditioning tangible personal property for ultimate sale at retail or use in the manufacturing of a product to be ultimately sold at retail or affixed to and made a structural part of real estate located in another state."

[10] See *Detroit Edison*, 303 Mich App at 625 n 4.

[11] If the industrial processor's distribution equipment was not "tangible personal property," it would not be liable for the Use Tax exemption under MCL 205.94*o*. However, it is hard to imagine distribution equipment that would not be "tangible personal property."

[12] See also *Detroit Edison*, 303 Mich App at 615–619 for further information on how electrical distribution equipment modifies and makes electricity safe for home and business use.

reaches its customers for use. Consumers' electrical distribution equipment[13] is thus entitled to exemption from the Use Tax under the industrial-processing exemption in MCL 205.94*o*. *Detroit Edison*, 303 Mich App at 627.

Treasury's arguments to the contrary—namely, that: (1) 141 PA 2000 and 390 PA 2000 mandate that equipment used in the transmission and distribution of electricity is subject to the Use Tax; and (2) tangible personal property used in the distribution of "electrical energy," as opposed to tangible personal property used in the distribution of "electricity," is subject to the Use Tax under Michigan Administrative Code Rules 205.90 and 205.115—were flatly rejected by our Court in *Detroit Edison*. This is because Treasury conflated the taxation of electricity with the taxation of electrical distribution equipment,[14] and its proffered interpretation of MCL 205.94*o* contravened the plain meaning of the Use Tax Act. As our Court stated: "[t]he terms 'form, composition, quality, combination, or character,' MCL 205.94*o*(7)(a), are sufficiently broad and expansive to encompass voltage and current changes in electricity as it travels through the transmission and distribution system." *Detroit Edison*, 303 Mich App at 628. Furthermore, as in *Detroit Edison*:

> [W]e have a situation in which machinery and equipment are concurrently used in a unified system for purposes of both distribution *and* industrial processing. In such a situation, the caselaw is clear that the "industrial processing" exemption applies to the machinery and equipment *in full*. [*Id*. at 630 (emphasis in original).]

Likewise, the administrative rule that Treasury claimed gave it license to levy the Use Tax on Consumers' electrical distribution equipment, R 205.115, "conflicts with the [Use Tax Act] and the industrial-processing exemption," a fact that makes the rule "invalid and unenforceable." *Detroit Edison*, 303 Mich App at 632.

Consumers is therefore entitled to the industrial-processing exemption to the Use Tax for its electrical distribution equipment under MCL 205.94*o*.

## B. NATURAL-GAS DISTRIBUTION EQUIPMENT

The above analysis applies with equal force to Consumers' natural-gas distribution equipment. In addition to "electricity," the definition of "tangible personal property" also includes "gas." MCL 205.92(k). Accordingly, under MCL 205.94*o*, "tangible personal property" used by an industrial processor in the industrial processing of natural gas is exempt from the Use Tax.

---

[13] To repeat: this case involves a Use Tax levied on Consumers' electrical and natural gas distribution infrastructure—*not* the electricity or natural gas itself. See also *Detroit Edison*, 303 Mich App at 623 n 3.

[14] See n 6, supra.

Once again, it is undisputed that Consumers is an "industrial processor." It is also undisputed that its natural-gas distribution equipment is "tangible personal property," in that it "can be seen . . . felt, or touched." MCL 205.92(k). Consumers presented extensive evidence at trial that its natural-gas distribution equipment changes "the form, composition, quality, combination, or character" of natural gas *before* it reaches its customers for use. Treasury failed to provide comparable evidence that Consumers' natural-gas distribution equipment *did not* change "the form, composition, quality, combination, or character" of natural gas before it reaches customers for use. Instead, it merely asserted that the equipment does not modify the character of the natural gas being transported.[15] Consumers' natural-gas distribution equipment is thus entitled to exemption from the Use Tax under the industrial-processing exemption in MCL 205.94*o*.

As the Court of Claims observed, Treasury's arguments to the contrary are unavailing. The case on which Treasury relies involved tax levied on equipment that "obviously did not . . . change . . . the character of the product handled by plaintiff," which sought to exempt this equipment from the Use Tax. *Bay Bottled Gas Co v Mich Dep't of Revenue*, 344 Mich 326, 329; 74 NW2d 37 (1955). The exact opposite is true here—as noted, Consumers' natural-gas distribution equipment obviously *did* "change the character" of the natural gas Consumers sold to its customers, by making the gas safe and usable for them. The Court of Claims thus correctly held that Consumers' natural-gas distribution equipment is entitled to exemption from the Use Tax under MCL 205.94*o*.

## C. THE ASP PROGRAM

The Court of Claims was similarly correct in its holding on the ASP program. Treasury has offered no convincing explanation of why Consumers should be made to pay Use Tax on repair-related items that are purchased (presumably with sales tax included) by third-party contractors. Because Consumers did not "us[e], stor[e], or consum[e]" the repair-related items, it cannot be liable for Use Tax on those items. MCL 205.93(1). Moreover, if the third-party contractors paid sales tax on the repair-related items—and we have no reason to doubt that they did, nor did Treasury provide any evidence to the contrary—the Use Tax Act bars any assessment of the Use Tax on those items because sales tax has already been paid. MCL 205.94(1). The Court of Claims therefore correctly held that Consumers is not liable for Use Tax on the repair-related items purchased by third-party contractors as part of the ASP program.

## IV. CONCLUSION

Accordingly, we hold that: (1) Consumers' electrical distribution equipment and natural-gas distribution equipment are entitled to exemption from the Use Tax under MCL 205.94*o*; and (2) Consumers cannot be liable for Use Tax levied on repair-related items purchased by third-party contractors under the ASP plans. The ruling of the Court of Claims is therefore affirmed in

---

[15] "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003).

part and reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

Affirmed in part, reversed in part, and remanded.

/s/ Henry William Saad
/s/ Peter D. O'Connell
/s/ Christopher M. Murray