## PRESTON v DEPARTMENT OF TREASURY

Docket No. 295055. Submitted April 13, 2011, at Lansing. Decided May 26, 2011, at 9:15 a.m. Leave to appeal denied, 490 Mich 893.

Forrest L. Preston brought an action in the Court of Claims, seeking a refund of payments made to the Department of Treasury for income tax deficiencies assessed for the years 2000 and 2001. Preston was a resident of Tennessee and owned 99 percent of Life Care Affiliates II (LCA II), a Tennessee limited partnership. LCA II was a general partner in 22 lower-level partnerships, which owned 27 nursing homes operating in 11 different states. The 22 partnerships were all structured identically, with LCA II owning a 99 percent interest as a general partner and Preston owning a 1 percent interest as a limited partner. One of the lower-level partnerships owned by LCA II was Riverview Medical Investors Limited Partnership (RMI), which, in turn, owned two nursing homes that operated solely in Michigan. The remaining partnerships operated outside of Michigan. During the tax years at issue, RMI reported gains to LCA II, but some of the other lower-level partnerships reported losses. Preston treated the income and losses distributed from LCA II as business income and apportioned it among the states in which LCA II had partnerships. Thus, the income from RMI was offset by the losses from the other partnerships. The Department of Treasury contended that an apportionment including the losses from other states was improper. Preston paid the tax deficiency under protest and then filed a complaint in the Court of Claims, seeking a refund of the monies paid. The court, Rosemarie E. Aquilina, J., granted Preston's motion for summary disposition and ordered defendant to refund Preston's payments, concluding that the businesses were related and intended to operate as a unit. The Department of Treasury appealed.

The Court of Appeals *held*:

If a taxpayer's income-producing activities are confined solely to Michigan, then the taxpayer's entire income must be allocated to Michigan. If a taxpayer has income from business activities that are taxable both in and outside of Michigan, that income is allocated or apportioned according to Michigan's apportionment formula. In order to apply Michigan's apportionment formula,

there must be some sharing or exchange of value not capable of precise identification or measurement. In the absence of an underlying unitary business, multistate apportionment is precluded. Mich Admin Code, R 206.12(16)(a) provides that ordinary income received by a partner is apportioned by the partnership apportionment factors provided in MCL 206.115 to MCL 206.195. In this case, Preston was the partner, not LCA II, and his distributed share of income received from LCA II had to be apportioned by the partnership apportionment factors. Preston cannot be considered an "indirect partner" in the lower-level partnerships, i.e., one who holds an interest in the partnerships through a "pass-thru partner" as those terms are defined by the Internal Revenue Code thereby permitting the Court to ignore LCA II for tax purposes, because those terms are not used in the Income Tax Act, MCL 206.1 *et seq*. In light of the record produced in the Court of Claims, it is clear that there was some sharing or exchange of value not capable of precise identification or measurement in the management of the nursing homes and that there was no genuine issue of material fact regarding whether LCA II was a unitary business. Apportionment was proper.

Affirmed.

1. TAXATION — INCOME TAX — MULTISTATE BUSINESSES — UNITARY BUSINESSES — APPORTIONMENT.

If a taxpayer's income-producing activities are confined solely to Michigan, then the taxpayer's entire income must be allocated to Michigan under the Income Tax Act; if a taxpayer has income from business activities that are taxable both in and outside of Michigan, that income is allocated or apportioned according to Michigan's apportionment formula; in order to apply Michigan's apportionment formula, there must be some sharing or exchange of value not capable of precise identification or measurement; in the absence of an underlying unitary business, multistate apportionment is precluded (MCL 206.102; MCL 206.103).

2. TAXATION — INCOME TAX — WORDS AND PHRASES — FEDERAL TERMINOLOGY — PASS-THRU PARTNERS — INDIRECT PARTNERS.

Any terms used in the Income Tax Act have the same meaning as when used in comparable context in federal law, but incorporation of federal terminology only applies when a term used in the Income Tax Act has been used in a similar context under federal law; the terms "pass-thru partner" and "indirect partner" are not used in the Income Tax Act and, thus, the federal definitions

of those terms are irrelevant to the interpretation of the Michigan act (MCL 206.2[2]; 26 USC 6231[a][9], [10]).

*Honigman Miller Schwartz & Cohn LLP* (by *June Summers Haas* and *Daniel L. Stanley*) for Forrest L. Preston.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, and *Bradley K. Morton*, Assistant Attorney General, for the Department of Treasury.

Before: METER, P.J., and SAAD and WILDER, JJ.

WILDER, J. Defendant appeals as of right a judgment of the Court of Claims granting plaintiff's motion for summary disposition. Plaintiff filed a complaint in the Court of Claims seeking a refund of payments made to defendant for tax deficiencies assessed for the years 2000 and 2001. The Court of Claims granted plaintiff's motion for summary disposition and ordered defendant to refund the payments. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a resident of Tennessee and owns Life Care Affiliates II (LCA II), a Tennessee limited partnership. Plaintiff owns 99 percent of LCA II, 98 percent as a general partner and 1 percent as a limited partner.

LCA II is a general partner in 22 lower-level partnerships that own a total of 27 nursing homes operating in 11 different states. Each of these 22 partnerships is structured in the same fashion, with LCA II owning a 99 percent interest as general partner, and plaintiff owning a 1 percent interest as a limited partner. Ninety-nine percent of the profits and losses from each of the nursing homes are distributed to LCA II as the general

partner of the lower-level partnerships. LCA II then combines the profits and losses distributed from the lower-level partnerships and distributes them to plaintiff based on his 99 percent interest in LCA II. LCA II has no business activity of its own and LCA II's income and other contributions to its tax base are pass-through items from these 22 lower-level partnerships. One of the lower-level partnerships that LCA II and plaintiff own is Riverview Medical Investors Limited Partnership (RMI). RMI, in turn, owns two nursing homes that operate solely in Michigan. The remaining partnerships operate outside of Michigan. LCA II hired another company, Life Care Centers of America, Inc. (LCA),[1] to manage and operate all of the nursing homes.

In 2007, defendant audited plaintiff's individual income tax returns for the years 1998-2001. Following the audit, defendant assessed income tax deficiencies for the years 2000 and 2001, totaling $27,145, plus $11,202.60 in interest because defendant disagreed with plaintiff's apportionment of income and losses from LCA II. During the years at issue, RMI reported gains to LCA II. However, some other partnerships reported losses. When filing his Michigan individual income tax returns for these years, plaintiff treated all the income and losses distributed from LCA II as business income and apportioned it among all the states in which LCA II had partnerships. Thus, the income that RMI reported from the nursing homes in Michigan was offset by losses from other partnerships.

Defendant contends plaintiff was required to apportion all his income derived from RMI to Michigan and is not permitted to apportion income and losses from other partnerships because the other partnerships did not operate in Michigan. Plaintiff requested an infor-

---

[1] LCA is wholly owned by plaintiff, and plaintiff serves as its CEO.

mal conference with defendant and argued that the income from RMI should be apportioned with income and losses from all the nursing homes because RMI is part of plaintiff's unitary nursing-home business (LCA II), which is conducted and taxable in Michigan and other states.

The hearing referee, who presided over the informal conference, rejected plaintiff's argument and recommended that plaintiff be assessed the tax deficiency as originally determined. Defendant then issued a final bill of taxes due for the amount of $38,347.62, which plaintiff paid under protest. Plaintiff then filed a complaint in the Court of Claims for a refund of monies paid. After conducting discovery, both parties filed motions for summary disposition.

The Court of Claims conducted a hearing on plaintiff's motion for summary disposition, and granted plaintiff's summary disposition motion from the bench. While acknowledging defendant's contention that LCA II was a pass-through entity, nevertheless, the Court of Claims concluded that it was clear that the businesses were all related and that they were intended to operate as one unit, with LCA II serving as the head. Defendant filed a motion for reconsideration, which the Court of Claims denied. This appeal ensued.

On appeal, defendant argues that plaintiff is required to apportion the income that LCA II received from RMI to Michigan because RMI operates exclusively in Michigan. Defendant further asserts that under the Michigan Income Tax Act, MCL 206.1 *et seq.* (MITA), income derived from multistate business activities can only be apportioned if the income arose as part of a "unitary business." Defendant contends that the income LCA II received from the other partnerships cannot be combined and apportioned under the MITA because the

income was received from separate entities that do not operate in Michigan. In short, defendant asserts that plaintiff's income was not derived from a "unitary business," but rather arose from several separate business entities, therefore precluding apportionment. We disagree.

## II. STANDARD OF REVIEW

A trial court's decision regarding a motion for summary disposition is reviewed de novo, as are questions involving statutory interpretation. *GMAC LLC v Dep't of Treasury*, 286 Mich App 365, 372; 781 NW2d 310 (2009).

## III. DISCUSSION

Although the United States Constitution does not impose a single tax formula on the states, apportionment is often implemented because of the difficulties in trying to allocate taxable income on the basis of geographic boundaries. *Allied-Signal, Inc v Dir, Div of Taxation*, 504 US 768, 778; 112 S Ct 2251; 119 L Ed 2d 533 (1992); *Container Corp of America v Franchise Tax Bd*, 463 US 159, 164; 103 S Ct 2933; 77 L Ed 2d 545 (1983). To address these difficulties, under what is known as the "unitary business principle," states are permitted to tax multistate businesses "on an apportionable share of the multistate business carried on in part in the taxing State." *Allied-Signal*, 504 US at 778.

Pursuant to the MITA, Michigan has adopted an apportionment-based tax scheme. If a taxpayer's income-producing activities are confined solely to Michigan, then the taxpayer's entire income must be allocated to Michigan. MCL 206.102. However, if a taxpayer has income from business activities that are

taxable both in and outside of Michigan, that income is allocated or apportioned according to MITA. MCL 206.103. Income is apportioned to Michigan "by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3." MCL 206.115. "The property, payroll, and sales factors represent the percentage of the total property, payroll, or sales of the business used, paid, or made in this state." *Grunewald v Dep't of Treasury*, 104 Mich App 601, 606; 305 NW2d 269 (1981), citing MCL 206.116, MCL 206.119, and MCL 206.121.

In order to apply Michigan's apportionment formula there must " 'be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation.' " *Holloway Sand & Gravel Co, Inc v Dep't of Treasury*, 152 Mich App 823, 834-835; 393 NW2d 921 (1986), quoting *Container Corp of America*, 463 US at 166. In the absence of some underlying unitary business, multistate apportionment is precluded. *Holloway*, 152 Mich App at 830. To determine whether there is a unitary business this Court looks at (1) economic realities, (2) functional integration, (3) centralized management, (4) economies of scale, and (5) substantial mutual interdependence. *Id.* at 831.

Defendant advances three main arguments in support of its position that we should disregard the existence of LCA II for tax purposes and preclude plaintiff from apportioning his LCA II income. First, defendant cites Mich Admin Code, R 206.12(16), which provides:

> Distributive share items received by a partner are allocated or apportioned as follows:

(a) Ordinary income is apportioned to Michigan by the partnership apportionment factors provided in [MCL 206.115 to 206.195].

Defendant argues that LCA II is the partner referenced in Rule 206.12(16) and that RMI and the other lower-level partnerships are the partnerships referenced in subsection (a). Therefore, defendant contends LCA II's only Michigan income is its distributive share from RMI. Defendant's interpretation, however, ignores the existence of plaintiff. It looks only at LCA II's distributed share income from the 22 lower-level partnerships and then attempts to place plaintiff in the position of LCA II.

This argument is a strained reading of the administrative rule. By its plain language the rule provides that ordinary income received by a partner is apportioned by the partnership apportionment factors. In this case, plaintiff is the partner, and his distributed share of income received from LCA II is apportioned by the partnership apportionment factors. Although defendant asserts that the approach to apportionment referenced in its brief has been consistently applied, it cites no authority to support this. Rather, it simply cites the existence of Rule 206.12(16)(a).

Defendant next argues that we simply ignore LCA II for tax purposes because plaintiff is an "indirect partner" in all 22 lower-level partnerships, that is, plaintiff holds an interest in the partnerships through a "pass-thru partner." In support of this argument, defendant relies on 26 USC 6231(a)(9) and (10). Under 26 USC 6231(a)(9), " 'pass-thru partner' means a partnership . . . through whom other persons hold an interest in the partnership with respect to which proceedings under this subchapter are conducted." 26 USC 6231(a)(10) provides that " 'indirect partner' means a

person holding an interest in a partnership through 1 or more pass-thru partners." Defendant seeks to borrow the definitions of "indirect partner" and "pass-thru partner" from the federal Internal Revenue Code (IRC) and utilize them in interpreting Michigan Law.

However, MCL 206.2(2) provides that "[a]ny term used in this act shall have the same meaning as when used in comparable context in the laws of the United States . . . ." Thus, MCL 206.2(2) only applies when a term used in the MITA has been used in a similar context under the IRC. Because "indirect-partner" and "pass-thru partner" are terms not used in the MITA, defendant's argument must fail.[2] Notably, this Court previously rejected a similar argument concerning the former Single Business Tax Act, MCL 208.1 *et seq*. See *Kmart Mich Prop Servs, LLC v Dep't of Treasury*, 283 Mich App 647, 655; 770 NW2d 915 (2009).

Finally, defendant argues that the unitary business principle does not apply. We disagree.

In its brief in response to plaintiff's motion for summary disposition, defendant did not argue that the unitary business principle did not apply to LCA II, but argued, as it does on appeal, that the principle is not recognized at all because *Holloway* is not binding.[3]

---

[2] Furthermore, 26 USC 6231(a)(9) and (10) only apply to very limited situations. The general rule for partnerships under the IRC is that "[i]n determining his income tax, each partner shall take into account separately his distributive share of the partnership's" gains and losses. 26 USC 702(a). Therefore, under the IRC, in determining his income tax, plaintiff would take into account his gains and losses from LCA II.

[3] Defendant contends that "*Holloway* is not binding on Treasury for the reason that [in that case] the Court of Appeals was addressing a single entity that had two business operations, one in Michigan and one in Texas." Defendant does not explain, or cite any authority that explains, why consideration of a single business entity with two operations should be treated differently than a single entity with 22 operations.

At the motion hearing, defendant's counsel only *argued* that LCA managed the partnerships and that LCA II did not. Thus, the affidavit of Steve Ziegler, chief financial officer of LCA, submitted by plaintiff, went unrebutted. Ziegler asserted that LCA II hired LCA, a company owned and operated by plaintiff, to manage and operate all 22 lower-level partnerships. Ziegler explained that LCA used common operation and management techniques among the nursing homes, resulting in economies of scale. Furthermore, Ziegler stated that the nursing homes have centralized management and their costs are reduced through shared planning and centralized purchasing. Thus, in light of the information in Ziegler's affidavit, it is clear that there is " 'some sharing or exchange of value not capable of precise identification or measurement' " that occurs from the centralized management. *Holloway*, 152 Mich App at 834, quoting *Container Corp of America*, 463 US at 166. Accordingly, there is no genuine issue of material fact regarding whether LCA II is a unitary business, and therefore, apportionment is proper under the MITA.

Affirmed.

METER, P.J., and SAAD, J., concurred with WILDER, J.