WHEELER ESTATE v DEPARTMENT OF TREASURY

HUZELLA v DEPARTMENT OF TREASURY

WRIGHT v DEPARTMENT OF TREASURY

WHEELER v DEPARTMENT OF TREASURY

Docket Nos. 302251, 302259, 302261, and 302262. Submitted April 10, 2012, at Lansing. Decided July 31, 2012, at 9:05 a.m. Leave to appeal granted, 493 Mich 865.

The Department of Treasury issued tax bills to the estate of Thomas M. Wheeler (Docket No. 302251), Nicholas and Lisa J. Huzella (Docket No. 302259), Patrick and Michaelon Wright (Docket No. 302261), and Thomas R. and Patsy Wheeler (Docket No. 302262), asserting that additional income tax payments were due for the years 1994 and 1995. The taxpayers were shareholders of an S corporation, Electro-Wire Products, which in 1994 had acquired the business assets of a German business, Temic Telefunken Kabelsatz, GmbH. In order to accomplish the asset purchase, two partnerships were created: (1) an operating company also named Temic Telefunken Kabelsatz, GmbH (TKG), and (2) a holding company named Electro-Wire Products, GmbH (EWG), which held a 99.5 percent interest in TKG. Electro-Wire held a 99 percent interest in EWG and the remaining 0.5 percent interest in TKG. In 1994 and 1995, the taxpayers received flow-through income from Electro-Wire, including the corporation's distributive share of the partnership income from TKG. The taxpayers reported the income by treating Electro-Wire and TKG as a unitary business and combining their apportionment factors. The department asserted that the unitary business principle did not apply to individuals and that the taxpayers were required to apply Electro-Wire's apportionment factors to its income alone. The taxpayers sought an informal conference before a hearing referee, who concluded that the unitary business principle could be applied to individual taxpayers. The department rejected the hearing referee's recommendation in its ultimate decision and order of determination, upholding the tax assessments. The taxpayers filed petitions for review in the Tax Tribunal, which consolidated the cases. The Tax Tribunal granted the taxpayers' motion for summary disposition

and denied the department's motion for summary disposition, determining that the unitary business principle applied and that Electro-Wire and TKG were a unitary business and entitled to combine their apportionment factors. The department appealed each case separately. The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Under the unitary business principle, for a business or individual to exercise multistate apportionment of income, there must be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—that renders formula apportionment a reasonable method of taxation. Michigan law does not allow separate entities to be treated as a unitary business in the absence of some common ownership at the entity level, and being owned by the same individual taxpayers is insufficient to trigger this relationship requirement. In these cases, Electro-Wire and TKG were not separate and legally distinct business entities, but stood in a parent/subsidiary relationship. Notably, the income to the taxpayers flowed through one source, Electro-Wire. Under the circumstances, application of multistate apportionment was appropriate.

2. Under the Income Tax Act, MCL 206.1 *et seq.*, specifically MCL 206.103, any taxpayer having income from a business activity that is taxable both within Michigan and within any foreign country is required to apportion his or her net income. For the years in issue, the language used to define the statutory apportionment factors made clear that there was no specific prohibition on apportioning business income through the addition of international apportionment factors—provided that the international business was unitary with the Michigan business. And, as a constitutional matter, the United States Supreme Court has held that international apportionment factors may be included in a state's apportionment calculations.

3. In determining whether two businesses are unitary for purposes of the Income Tax Act, a court must consider (1) economic realities, (2) functional integration, (3) centralized management, (4) economies of scale, and (5) substantial mutual interdependence. Consideration of economic realities addresses whether the regularly conducted activities of the businesses in question are related. In these cases, both Electro-Wire and TKG were engaged in the same business. There is no requirement that the unity of businesses be the result of collaborative development. Consideration of functional integration concerns the extent to

which business functions are blended to promote a unitary relationship. In these cases, when it was acquired, TKG was without certain critical support services, and Electro-Wire began providing those services. Thus, the businesses were sufficiently integrated. When considering whether management of the businesses was centralized, it was sufficient that TKG was subject to centralized management decisions directed by Electro-Wire's managers. Complete management was not required. Evidence of economic benefits that resulted from the combination of Electro-Wire and TKG was sufficient to establish the presence of economies of scale. Evidence regarding bulk purchasing or improved resource allocation was not necessary to demonstrate the presence of economies of scale. With regard to substantial mutual interdependence, the taxpayers presented evidence that acquisition of TKG was essential for Electro-Wire to retain a critical client. In light of the evidence concerning these factors, the Tax Tribunal's decision that Electro-Wire and TKG were a unitary business was supported by unrebutted, competent, material, and substantial evidence on the whole record.

4. Under MCL 205.23(3), if any part of a tax deficiency is the result of negligence, a penalty of $10 or 10 percent of the deficiency, whichever is greater, plus interest is added to the deficiency. However, the department must waive this penalty if the taxpayer demonstrates that the tax deficiency resulted from reasonable cause. Reasonable cause is generally deemed to exist when there is an honest difference of opinion with regard to the effect or application of the law. In these cases, the taxpayers calculated their tax liabilities in reliance on appellate court decisions. The cases formed a substantial legal foundation on which the taxpayers could base their opinions regarding the application of the Income Tax Act to their individual returns, and the taxpayers thus exercised reasonable care in completing their tax returns. Under the circumstances, the Tax Tribunal did not err by declining to impose the penalty.

Affirmed.

1. TAXATION — INCOME TAX — MULTISTATE BUSINESSES — APPORTIONMENT — UNITARY BUSINESS PRINCIPLE.

Under the unitary business principle, for a business or individual to exercise multistate apportionment of income, there must be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—that renders formula apportionment a reasonable method of taxation; Michigan

law does not allow separate entities to be treated as a unitary business in the absence of some common ownership at the entity level, and being owned by the same individual taxpayers is insufficient to trigger this relationship requirement.

2. TAXATION — INCOME TAX — INTERNATIONAL BUSINESSES — APPORTIONMENT.

Any taxpayer having income from a business activity that is taxable both within Michigan and within any foreign country is required to apportion his or her net income; when the language used to define the applicable statutory apportionment factors makes clear that there is no specific prohibition on apportioning business income through the addition of international apportionment factors, the Income Tax Act does not exclude foreign entities from consideration under the unitary business principle for apportionment purposes (MCL 206.20, MCL 206.103, MCL 206.115, and MCL 206.121).

3. TAXATION — INCOME TAX — MULTISTATE BUSINESSES — APPORTIONMENT — UNITARY BUSINESS PRINCIPLE — CONSIDERATIONS.

In determining whether two businesses are unitary for purposes of the Income Tax Act, a court must consider (1) economic realities, (2) functional integration, (3) centralized management, (4) economies of scale, and (5) substantial mutual interdependence; consideration of economic realities addresses whether the regularly conducted activities of the businesses in question are related—there is no requirement, however, that the unity of businesses be the result of collaborative development; consideration of functional integration concerns the extent to which business functions are blended to promote a unitary relationship; consideration of centralized management requires consideration of whether management of the businesses was centralized across the potentially unitary business—complete management, however, is not required; consideration of economies of scale examines the presence of economies of scale—evidence regarding bulk purchasing or improved resource allocation, however, is not necessary to demonstrate the presence of economies of scale; consideration of substantial mutual interdependence examines whether such interdependence exists (MCL 206.1 *et seq.*)

4. TAXATION — INCOME TAX — DEFICIENCIES — PENALTIES — WAIVER — REASONABLE CAUSE.

Under MCL 205.23(3), if any part of a tax deficiency is the result of negligence, a penalty of $10 or 10 percent of the deficiency, whichever is greater, plus interest is added to the deficiency; however, the Department of Treasury must waive this penalty if

the taxpayer demonstrates that the tax deficiency resulted from reasonable cause; reasonable cause is generally deemed to exist when there is an honest difference of opinion with regard to the effect or application of law.

*Honigman Miller Schwartz and Cohn LLP* (by *June Summers Haas* and *Eric J. Eggan*) for petitioners.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Kevin T. Smith*, Assistant Attorney General, for respondent.

Before: HOEKSTRA, P.J., and SAWYER and SAAD, JJ.

PER CURIAM. Respondent, the Department of Treasury, appeals an order of the Michigan Tax Tribunal that granted petitioners' motion for summary disposition and denied respondent's motion for summary disposition. For the reasons set forth in this opinion, we affirm.

## I. FACTS AND PROCEEDINGS

Petitioners were shareholders of an S corporation called Electro-Wire Products that makes electrical systems for Ford Motor Company. Ford wanted Electro-Wire to establish a worldwide presence, so in 1994 Electro-Wire acquired all the business assets of a German business, Temic Telefunken Kabelsatz, GmbH,[1] which was also engaged in the business of manufacturing and assembling electrical distribution systems. To accomplish the asset purchase, two general partnerships were created: (1) an operating company also named Temic Telefunken Kabelsatz, GmbH (TKG),

---

[1] GmbH is the standard abbreviation for "Gesellschaft mit beschränkter Haftung," a German corporate form.

which held all the purchased assets, and (2) a holding company named Electro-Wire Products, GmbH (EWG), which held a 99.5 percent partnership interest in TKG. Electro-Wire held a 99 percent partnership interest in EWG, as well as the remaining 0.5 percent partnership interest in TKG. As an S corporation and two general partnerships, Electro-Wire, EWG, and TKG were flow-through entities for tax purposes.

In 1994 and 1995, petitioners received flow-through income from Electro-Wire, which included Electro-Wire's distributive share of the partnership income from TKG. Petitioners reported this income by treating Electro-Wire and TKG as a unitary business and combining their apportionment factors. Respondent audited petitioners for those years and issued petitioners a tax bill. Respondent asserted that the unitary business principle (UBP) did not apply to individuals under the Income Tax Act (ITA), MCL 206.1 *et seq.*, and that petitioners were required to apply Electro-Wire's apportionment factors to Electro-Wire's income alone and independently of TKG. A hearing referee found that the UBP applied to individuals like petitioners and that Electro-Wire and TKG were a unitary business entitled to combining apportionment factors for tax purposes, but respondent disagreed. Petitioners appealed to the Tax Tribunal and, as noted, the tribunal ruled in favor of petitioners.

## II. STANDARDS OF REVIEW

Absent an allegation of fraud, this Court reviews a Tax Tribunal decision for misapplication of the law or adoption of a wrong legal principle. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010). We uphold the Tax Tribunal's findings of fact if they are supported by competent, material, and sub-

stantial evidence in the record as a whole. *Canterbury Health Care, Inc v Dep't of Treasury*, 220 Mich App 23, 28; 558 NW2d 444 (1996). We review de novo the grant or denial of a motion for summary disposition. *Briggs Tax Serv*, 485 Mich at 75.

### III. ANALYSIS

#### A. APPLICATION OF THE UBP

Respondent argues that the UBP does not permit individuals to combine the income from multiple entities for apportionment purposes.

Under the ITA, if a taxpayer's income-producing activities are confined solely to Michigan, then the taxpayer's entire income must be allocated to Michigan. MCL 206.102. If a taxpayer has income from activities that are taxable both inside and outside of Michigan, that income is allocated pursuant to MCL 206.115. MCL 206.103. In order to distinguish between multistate businesses that can allocate their income to specific geographic areas and multistate businesses that cannot, the United States Supreme Court has recognized the value of the UBP. *Allied-Signal, Inc v Div of Taxation Dir*, 504 US 768, 778; 112 S Ct 2251; 119 L Ed 2d 533 (1992). Under the UBP, for a business or individual to exercise multistate apportionment, there must "be some sharing or exchange of value not capable of precise identification or measurement—beyond the mere flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation." *Container Corp of America v Franchise Tax Bd*, 463 US 159, 166; 103 S Ct 2933, 77 L Ed 2d 545 (1983). This Court has also recognized the functionality of the UBP, applying it in a number of previous appellate decisions,

including *Holloway Sand & Gravel Co, Inc v Dep't of Treasury*, 152 Mich App 823; 393 NW2d 921 (1986), *Jaffe v Dep't of Treasury*, 172 Mich App 116; 431 NW2d 416 (1988), and the cases discussed next.

This Court has recently issued two published opinions addressing the application of the UBP to business income derived from multiple entities: *Preston v Dep't of Treasury*, 292 Mich App 728; 815 NW2d 781 (2011), and *Malpass v Dep't of Treasury*, 295 Mich App 263; 815 NW2d 804 (2012).

In *Preston*, a taxpayer was the sole partner in a Tennessee limited partnership, Life Care Affiliates II (LCA II), that owned a 99 percent share in 22 lower-level limited partnerships. *Preston*, 292 Mich App at 730. Those lower-level partnerships in turn owned 27 nursing homes nationwide. *Id.* One of those lower-level partnerships owned a pair of nursing homes that operated in Michigan, while the remaining 21 lower-level partnerships had no Michigan business activities. *Id.* at 730-731.

All 22 partnerships distributed gains and losses to LCA II, which in turn distributed the combined income to the taxpayer. *Id.* When reporting his Michigan income, the taxpayer offset the gains produced by the partnership operating his Michigan-based nursing homes with losses suffered by other partnerships. *Id.* at 731. Upon a challenge from respondent, this Court concluded that LCA II operated the lower-level partnerships as a unitary business and that the taxpayer was entitled to apportion the income he received from LCA II. *Id.* at 733-737.

In *Malpass*, however, this Court reached a different result under different facts. The taxpayers owned two separate S corporations, one operating in Michigan and one operating in Oklahoma. *Malpass*, 295 Mich App at

265-266. The taxpayers initially filed their individual income tax returns by treating the S corporations as separate, nonunitary businesses, but later filed amended returns seeking to treat them as a unitary business. *Id.* at 266. Upon a challenge by respondent, this Court, while acknowledging that the S corporations in question had many characteristics of a unitary business, rejected the taxpayers' application of the UBP because the S corporations were "separate and legally distinct business entities, and nothing in the ITA allows for combined-entity reporting." *Id.* at 270.

*Malpass* also distinguished its facts from those in *Preston*, concluding that, although each of the 22 partnerships was a separate entity, all were joined by LCA II, which owned 99 percent of each of the 22 lower-level partnerships. *Malpass*, 295 Mich App at 274-275. By contrast, the taxpayers in *Malpass* received business income from two separate businesses. *Id.* at 275. Given this distinction, it appears that Michigan law does not allow separate entities to be treated as a unitary business in the absence of some common ownership at the entity level and that being owned by the same individual taxpayers is insufficient to trigger this relationship requirement.

We hold that the facts in the cases at issue here are more analogous to those of *Preston* than *Malpass*. TKG is 99 percent owned by EWG, which is in turn 99.5 percent owned by Electro-Wire. Electro-Wire and TKG are not "separate and legally distinct business entities," but stand in what amounts to a parent/subsidiary relationship. Like *Preston*, the income to petitioners flowed through one source, in this case Electro-Wire, and not through two separate sources as in *Malpass*. Therefore, Electro-Wire and TKG should be permitted to avail themselves of multistate apportionment under the ITA.

Accordingly, because the UBP permits individuals to combine the income of multiple entities that are legally associated and unitary businesses for apportionment purposes, the Tax Tribunal did not err by awarding summary disposition to petitioners.

### B. THE UBP AND FOREIGN ENTITIES

We also disagree with respondent that the ITA excludes foreign entities from consideration under the UBP for apportionment purposes.

The goal of statutory interpretation is to determine the intent of the Legislature. *AFSCME Council 25 v State Employees' Retirement Sys*, 294 Mich App 1, 8; 818 NW2d 337 (2011). "The starting place for the search for intent is the language used in the statute." *Bio-Magnetic Resonance, Inc v Dep't of Pub Health*, 234 Mich App 225, 229; 593 NW2d 641 (1999). Although this Court affords respectful consideration to the construction given a statute by an agency and ought not overrule an agency's construction, if persuasive, without cogent reasons, the agency's interpretation is not binding on this Court and cannot conflict with the plain meaning of the statute. *In re Rovas Complaint Against SBC Mich*, 482 Mich 90, 103, 108-109; 754 NW2d 259 (2008). Nonetheless, when tax statutes are construed, any ambiguities are resolved in favor of the taxpayer. *Int'l Business Machines v Dep't of Treasury*, 220 Mich App 83, 86; 558 NW2d 456 (1996).

Pursuant to MCL 206.103, "[a]ny taxpayer having income from business activity which is taxable both within and without this state . . . shall allocate and apportion his net income as provided in this part." "State" is defined under MCL 206.20 as "any state of the United States, the District of Columbia, the Com-

monwealth of Puerto Rico, any territory or possession of the United States, and *any foreign country*, or political subdivision, thereof." (Emphasis added.) As such, any taxpayer having income from a business activity that is taxable both within Michigan and within any foreign country is required to apportion his or her net income.

This apportionment is carried out in accordance with MCL 206.115, which, before January 1, 2012, required apportionment of business income by "multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3." During the years at issue, "property factor" was defined as "the average value of the taxpayer's real and tangible personal property owned or rented and used in this state" over "the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period." Former MCL 206.116, repealed by 2011 PA 38. "Payroll factor" was defined as "the total amount paid in this state during the tax period by the taxpayer for compensation" over "the total compensation paid everywhere during the tax period." Former MCL 206.119, repealed by 2011 PA 38. "Sales factor" was, and is, defined as "the total sales of the taxpayer in this state during the tax period" over "the total sales of the taxpayer everywhere during the tax period." MCL 206.121. The Legislature's use of the words "all" and "everywhere" in these definitions makes it clear that there is no specific prohibition on apportioning business income through the addition of international apportionment factors, provided that the international business is unitary with the Michigan business.

Moreover, the United States Supreme Court has held that, as a constitutional matter, international apportionment factors may be included in a state's apportionment calculations. *Container Corp*, 463 US 159. Respondent contends that Michigan is not required to tax to the maximum constitutional limit and that it is for the Legislature to instruct, through specific statutory provisions, whether international apportionment factors should be included under the ITA. However, this argument ignores the fact that the plain language of the ITA requires unitary, international businesses to apportion their income, and the plain language of the ITA in effect during the years at issue required unitary, international businesses to include international apportionment factors in the calculation of property, payroll, and sales factors. "If the statute's language is plain and unambiguous, we assume the Legislature intended its plain meaning; therefore, we enforce the statute as written and follow the plain meaning of the statutory language." *Grossman v Brown*, 470 Mich 593, 598; 685 NW2d 198 (2004).

Therefore, because the ITA does not exclude foreign entities from consideration under the UBP, the Tax Tribunal did not err by granting summary disposition to petitioners.

### C. ELECTRO-WIRE AND TKG AS A UNITARY BUSINESS

Respondent's argument that the Tax Tribunal erred by finding Electro-Wire and TKG to be a unitary business also lacks merit.

This Court utilizes a five-factor test to assess whether two businesses are unitary. This Court outlined these factors in *Holloway*, 152 Mich App at 831, as follows: "(1) economic realities; (2) functional integration; (3) centralized management; (4) economies of

scale, and (5) substantial mutual interdependence." Petitioners submitted unrebutted evidence to the Tax Tribunal to establish each of these five criteria, and the Tax Tribunal concluded that petitioners had established at least four, and possibly all five, of the relevant factors.

The first factor, economic realities, addresses whether the regularly conducted activities of the businesses in question are related. *Holloway*, 152 Mich App at 832. The record shows that the underlying businesses of Electro-Wire and TKG were identical because both were engaged in the manufacturing and assembling of electrical distribution systems. Respondent claims that this is immaterial because the two businesses were engaged in the same underlying business before Electro-Wire purchased TKG. However, there is no requirement under *Holloway* or related cases that potentially unitary businesses develop the same underlying activities collaboratively; the only requirement is that the underlying businesses be related to each other.

The second factor, functional integration, concerns the extent to which business functions are blended to promote a unitary relationship. Petitioners presented evidence that, before it was acquired by Electro-Wire, TKG was part of the Daimler Group. Once Electro-Wire purchased TKG, however, this relationship was severed, leaving TKG without critical support services, which were assumed by Electro-Wire. These services included direct management of TKG's business activities and support for component engineering, manufacturing and industrial engineering, cost estimating, business development, finance, and executive administration. Respondents presented no rebuttal evidence, but set forth on appeal a list identifying ways in which Electro-Wire and

TKG were not integrated. However, this belated argument is not persuasive because there is no requirement that businesses be 100 percent integrated in order to classify them as unitary.

The third factor examines the extent to which management was centralized across the potentially unitary business. Petitioners submitted unrebutted evidence that TKG's overall management decisions were centralized and directed by Electro-Wire managers in North America and that Electro-Wire hired and fired all TKG officers and managers. Again, respondent presented no rebuttal evidence, but alleges that Electro-Wire did not engage in day-to-day management of TKG. Again, however, the only requirement under *Holloway* is centralized management, not complete management.

The fourth factor looks for the presence of economies of scale. Petitioners presented unrebutted evidence of economic benefits generated by the combination of Electro-Wire and TKG, such as an expanded customer base, sharing of unique and proprietary processes, and improved financing terms. Respondent presented no evidence to challenge this, but argues that petitioners failed to show profits through bulk purchasing or improved allocation of resources. These are typically considered to be common economies of scale, but respondent does not explain how cheaper component parts, an expanded customer base, increasing economic diversification, and improved financing conditions are not also benefits derived from economies of scale.

The fifth and final factor considers whether substantial mutual interdependence exists. Petitioners submitted unrebutted evidence that acquiring TKG was essential for Electro-Wire to remain a supplier for Ford and that remaining a supplier for Ford was essential to Electro-Wire's survival. The Tax Tribunal found that

Electro-Wire was dependent on TKG, but was unable to conclude whether or not TKG was similarly dependent on Electro-Wire, and thus resolved this factor partially in favor of petitioners.

On the basis of these factors, the Tax Tribunal's finding that Electro-Wire and TKG were a unitary business was supported by unrebutted, competent, material, and substantial evidence on the whole record.

### D. TEN PERCENT PENALTY

We reject respondent's argument that a 10 percent penalty for negligent failure to pay taxes should be imposed on petitioners.

Pursuant to MCL 205.23(3), if any part of a tax deficiency is the result of negligence, a penalty of $10 or 10 percent of the deficiency, whichever is greater, plus interest is added to the deficiency. MCL 205.23(3) also provides that respondent shall waive this negligence penalty if a taxpayer demonstrates that the tax deficiency resulted from reasonable cause. Reasonable cause is generally deemed to exist when there is an honest difference of opinion with regard to the effect or application of the law. *JW Hobbs Corp v Dep't of Treasury*, 268 Mich App 38, 54; 706 NW2d 460 (2005).

In these cases, petitioners based their tax returns on this Court's decisions in *Holloway* and *Jaffe*, as well as numerous United States Supreme Court decisions. These cases formed a substantial legal foundation on which petitioners could base their opinions regarding the application of the ITA to their individual returns. Moreover, the fact that petitioners have succeeded on the merits at their informal conference, before the Tax Tribunal, and in this Court, underscores the reasonableness of their legal position.

Therefore, because petitioners exercised reasonable care when filing their tax returns, the Tax Tribunal did not err by declining to impose a 10 percent penalty for negligent failure to pay taxes.

Affirmed.

HOEKSTRA, P.J., and SAWYER and SAAD, JJ., concurred.