# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Corbin R. Davis

MALPASS v DEPARTMENT OF TREASURY
WHEELER ESTATE v DEPARTMENT OF TREASURY
HUZELLA v DEPARTMENT OF TREASURY
WRIGHT v DEPARTMENT OF TREASURY
WHEELER v DEPARTMENT OF TREASURY

Docket Nos. 144430, 144431, 144432, 145367, 145368, 145369, 145370. Argued March 5, 2013 (Calendar Nos. 1, 6). Decided June 24, 2013.

Tad and Brenda L. Malpass (Docket No. 144430), Tracy and Brenda K. Malpass (Docket No. 144431), and Fred and Barbara Malpass (Docket No. 144432) brought separate actions in the Court of Claims, seeking a reversal of the Department of Treasury's decision to deny the Malpasses' amended individual income tax returns for the years 2001, 2002, and 2003. The Malpasses owned East Jordan Iron Works, a Michigan corporation that operated an iron foundry in East Jordan, Michigan; they also owned Ardmore Foundry, Inc., a Michigan corporation that operated an iron foundry located in Ardmore, Oklahoma. Both companies were classified as S-corporations under the Internal Revenue Code. For the specified years, the Malpasses treated the companies as separate, non-unitary entities for taxation purposes, which resulted in income from East Jordan being attributed to Michigan and Ardmore's losses being attributed to Oklahoma. The Malpasses later filed amended returns for those tax years and requested refunds totaling more than $1 million, claiming that they could combine East Jordan and Ardmore's profits and losses because they were a unitary business. The department denied the Malpasses' amended returns. The court, Rosemarie E. Aquilina, J., granted the Malpasses' motion for summary disposition, finding that East Jordan and Ardmore were a unitary business, that the unitary business principle applied to the Income Tax Act, MCL 206.1 *et seq.* (ITA), and that the Malpasses could combine the income and losses of East Jordan and Ardmore and then apportion the aggregate. The Court of Appeals, SHAPIRO, P.J., SAAD and BECKERING, JJ., reversed, finding that East Jordan and Ardmore were separate business entities and that the ITA did not allow individual taxpayers to combine their business income from separate business entities and then apportion on the basis of the combined apportionment factors of the entities. 295 Mich App 263 (2012). The Supreme Court granted the Malpasses' application for leave to appeal. 493 Mich 864 (2012).

The Wheeler estate (Docket No. 145367), Nicholas and Lisa J. Huzella (Docket No. 145368), Patrick and Michaelon Wright (Docket No. 145369), and Thomas R. and Patsy Wheeler (Docket No. 145370) (collectively, the taxpayers) filed petitions in the Tax Tribunal, challenging the assessment of taxes for the tax years 1994 and 1995. Members of the Wheeler

family were shareholders of Electro-Wire Products, Inc., a Michigan-based S-corporation. Electro-Wire acquired the assets of Temic Telefunken Kabelsatz, GmbH, which resulted in two general partnerships: Temic Telefunken Kabelsatz (TKG), the operating partnership, and Electro-Wire Products, GmbH (EWG), the holding partnership. The acquisition resulted in one S-corporation (Electro-Wire) and two general partnerships (TKG and EWG), with all the income and losses passing through to the owners as individual income. The taxpayers reported the income by treating the businesses as unitary and apportioned the income using the combined apportionment factors of both Electro-Wire and TKG. Following an audit, the department asserted that the unitary business principle did not apply to individuals and that the taxpayers were required to apply Electro-Wire's apportionment factors to its income alone, resulting in liabilities and interest totaling more than $2 million. The tribunal granted the taxpayers' motion for summary disposition, determining that under the ITA, the unitary business principle applied to individuals as well as to separate corporate entities. The Court of Appeals, HOEKSTRA, P.J., and SAWYER and SAAD, JJ., affirmed, concluding that Electro-Wire and TKG were a unitary business, the taxpayers could use combined reporting under the ITA, and that the apportionment could include income from business activity that was unitary with its Michigan business, Electro-Wire. 297 Mich App 411 (2012). The Supreme Court granted the Department of Treasury's application for leave to appeal. 493 Mich App 865 (2012).

In a unanimous opinion by Justice VIVIANO, the Supreme Court *held*:

Under the ITA, individual taxpayers may combine the profits and losses from unitary flow-through businesses and then apportion that income on the basis of those businesses' combined apportionment factors. For the 1994 and 1995 tax years, the apportionment could properly be applied to a foreign entity if the foreign entity and the individual taxpayer's in-state business were unitary.

1. The unitary business principle provides that a state may tax multistate businesses on an apportionable share of the multistate business conducted in the taxing state. The following factors are appropriate guides for determining whether business operations are unitary: (1) economic realities; (2) functional integration; (3) centralized management; (4) economies of scale; and (5) substantial mutual interdependence. Individual taxpayers in Michigan may use either a separate-entity reporting method to apportion income, or a combined reporting method. Separate-entity reporting requires each entity with a nexus to the taxing state to be considered as a separate and distinct entity, regardless of whether it could comprise a unitary business with other entities. Combined reporting requires each member of a unitary business to compute its individual taxable income attributable to activities in the state by taking a portion of the combined net income of the group through the utilization of combined apportionment factors. In *Malpass*, the parties did not dispute that East Jordan and Ardmore were unitary. In *Wheeler*, considering the totality of the circumstances, the tribunal's finding that Electro-Wire and TKG were a unitary business was supported by competent, material, and substantial evidence on the whole record, and the Court of Appeals properly affirmed that conclusion.

2. MCL 206.4(2), 206.102, 206.103, and 206.110(1) clearly require an individual taxpayer with business income stemming from business activity both within and outside of the state to allocate and apportion all business income using the formula set forth in MCL 206.115.

Section 115 provides for the application of formulary apportionment, but does not expressly require that a particular method of apportionment be used. Rather, the MCL 206.115 language is broad enough to allow both the separate-entity reporting and combined reporting method of formulary apportionment. Although the department has required individuals to use separate-entity reporting for flow-through business income in the past, it has not promulgated such a rule and the Supreme Court declined to adopt the department's preferred methodology; the ITA permits combined reporting because it satisfies the clear mandate of MCL 206.115 that all business income be apportioned to the state.

3. Taken together, MCL 206.103, 206.105, and MCL 206.20 require unitary businesses that include foreign entities to allocate and apportion their income as provided by the ITA. For the tax years 1994 and 1995, the version of MCL 206.115 in effect at that time stated in part that all business income shall be apportioned to Michigan; the language of the statute did not limit formulary apportionment to the domestic entities of a unitary business. Accordingly, for the 1994 and 1995 tax years, under MCL 206.115 an individual may use combined reporting for income derived from a foreign entity that is unitary with a domestic business taxable in Michigan. In *Malpass*, the Court of Appeals erred by concluding that the ITA did not allow the Malpasses to first combine the income from their unitary flow-through entities and then apportion it on the basis of the combined apportionment factors of East Jordan and Ardmore. In *Wheeler*, the Court of Appeals properly affirmed the tribunal's conclusion that the ITA contained no geographical limitation for the 1994 and 1995 tax years; combined reporting was proper even though the unitary business of Electro-Wire and TKG included an entity located in a foreign country.

*Malpass* reversed and remanded to the Court of Claims for reinstatement of the order granting summary disposition in favor of the Malpasses.

*Wheeler* affirmed, but part III(A) of the Court of Appeals' opinion vacated because it relied on *Malpass*, which was reversed by this decision.

©2013 State of Michigan

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

FILED JUNE 24, 2013

S T A T E   O F   M I C H I G A N

SUPREME COURT

TAD MALPASS and BRENDA L.
MALPASS,

Plaintiffs-Appellants,

v

No. 144430

DEPARTMENT OF TREASURY,

Defendant-Appellee.

_____

TRACY MALPASS AND BRENDA K.
MALPASS,

Plaintiffs-Appellants,

v

No. 144431

DEPARTMENT OF TREASURY,

Defendant-Appellee.

_____

FRED MALPASS and BARBARA
MALPASS,

Plaintiffs-Appellants,

v                                              No. 144432

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

---

WHEELER ESTATE,

        Petitioner-Appellee,

v                                              No. 145367

DEPARTMENT OF TREASURY,

        Respondent-Appellant.

---

NICHOLAS HUZELLA and LISA J.
HUZELLA,

        Petitioners-Appellees,

v                                              No. 145368

DEPARTMENT OF TREASURY,

        Respondent-Appellant.

---

PATRICK WRIGHT and MICHAELON
WRIGHT,

        Petitioners-Appellees,

v                                              No. 145369

DEPARTMENT OF TREASURY,

        Respondent-Appellant.

---

THOMAS R. WHEELER and PATSY
WHEELER,

          Petitioners-Appellees,

v                                  No. 145370

DEPARTMENT OF TREASURY,

          Respondent-Appellant.

---

BEFORE THE ENTIRE BENCH

VIVIANO, J.

In these consolidated cases, we address the application of Michigan's statutory apportionment formula for individuals with flow-through business income under the Michigan Income Tax Act (ITA).[1] In both cases, the individual taxpayers received income from in-state and out-of-state, flow-through businesses. The Michigan Department of Treasury (Department) refused the taxpayers' attempts to combine the flow-through income from their respective businesses and then apportion the income using the businesses' combined apportionment factors, and instead required the income of each entity to be apportioned separately.

We hold that the ITA does not prohibit individual taxpayers from combining the profits and losses from unitary flow-through businesses and then apportioning that

---

[1] MCL 206.1 *et seq.* The statutory provisions at issue in this opinion are to the versions of the ITA applicable to the tax years at issue. The Legislature has since amended many of these provisions. Except as discussed herein, those amendments have no bearing on these cases.

income on the basis of the businesses' combined apportionment factors. Moreover, we hold that the ITA did not limit apportionment of income to domestic businesses during the 1994 and 1995 tax years, and that the apportionment could properly be applied to a foreign entity to the extent that the foreign entity and the individual taxpayer's in-state business were unitary.

Accordingly, (1) we reverse the Court of Appeals' judgment in *Malpass* and reinstate the order entered by the Court of Claims granting summary disposition in favor of the Malpasses, and (2) we affirm the Court of Appeals' judgment in favor of the Wheelers.

## I. FACTS AND PROCEDURAL HISTORY

### A. *MALPASS v DEPARTMENT OF TREASURY*

Plaintiffs, individual members of the Malpass family, owned and operated East Jordan Iron Works (East Jordan), an iron foundry in East Jordan, Michigan. They also owned and operated Ardmore Foundry, Inc. (Ardmore), an iron foundry in Ardmore, Oklahoma. Both were Michigan corporations. Because of their S-corporation classification under the Internal Revenue Code,[2] all profits and losses flowed through the corporation to the family members individually.

For the tax years of 2001, 2002, and 2003, East Jordan operated at a profit and Ardmore operated at a loss. In their initial returns, the Malpasses treated the companies as separate, non-unitary entities. Accordingly, the Malpasses attributed East Jordan's income to Michigan and Ardmore's losses to Oklahoma. The Malpasses then amended

[2] 26 USC § 1361.

4

their returns for the 2001, 2002, and 2003 tax years, treating East Jordan and Ardmore as a unitary business, and combining East Jordan's profits with Ardmore's losses. The combined amount from the unitary business was then apportioned to Michigan on the basis of the Michigan apportionment factors, resulting in claims for refunds totaling over $1 million.

After the Department rejected the Malpasses' amended returns, the individual taxpayers brought actions in the Court of Claims. The actions were consolidated, and on November 19, 2009, the Court of Claims granted summary disposition in favor of plaintiffs. The Court of Claims determined that East Jordan and Ardmore were a unitary business on the basis of an undisputed affidavit. It then concluded that the unitary business principle applied to the ITA and that the Malpasses could first combine the income and losses of East Jordan and Ardmore and then apportion the aggregate.

In a published opinion, the Court of Appeals reversed, concluding that East Jordan and Ardmore were separate and legally distinct business entities and that the ITA did not allow for combined reporting of separate entities.[3] The Court of Appeals concluded that the Malpasses had received income from two separate businesses and were required to apportion the income of each entity separately.[4]

## B. *WHEELER v DEPARTMENT OF TREASURY*

Members of the Wheeler family were shareholders of Electro-Wire Products, Inc. (Electro-Wire), a Michigan-based S-corporation that made electrical systems. Electro-

---

[3] *Malpass v Dep't of Treasury*, 295 Mich App 263, 275; 815 NW2d 804 (2011).

[4] *Id.*

Wire acquired the assets of Temic Telefunken Kabelsatz, GmbH, a German company. The asset purchase resulted in two general partnerships: Temic Telefunken Kabelsatz, GmbH (TKG), the operating partnership, and Electro-Wire Products, GmbH (EWG), the holding partnership. The end result of the acquisition was one S-corporation (Electro-Wire) and two general partnerships (TKG and EWG), with all the income and losses passing through to the owners as individual income.

For the tax years 1994 and 1995, the Wheelers reported the pass-through Electro-Wire income on their individual tax returns; the income included partnership income from TKG. The Wheelers treated the businesses as unitary and then apportioned the income using the combined apportionment factors of both companies. After an audit and a determination that the unitary business principle did not apply to individual taxpayers, the Department required the Wheelers to apportion the income stemming from Electro-Wire on the basis of Electro-Wire's apportionment factors and to disregard TKG's factors, resulting in liabilities and interest totaling over $2 million.

The Tax Tribunal granted summary disposition in favor of the Wheelers, finding that there was no language in the ITA that supported the Department's assertion that the unitary business principle applied only on a separate-legal-entity level. In a published opinion, the Court of Appeals affirmed, concluding that the Wheelers could use combined reporting under the ITA and that the apportionment could extend to foreign-

6

business activity that was unitary with its Michigan business.[5]  The Court of Appeals also concluded that Electro-Wire and TKG were a unitary business.[6]

## II.  STANDARD OF REVIEW

In *Malpass*, we review de novo the trial court's decision on a motion for summary disposition.[7]  Our review of the Tax Tribunal's decision in *Wheeler* is limited.  In the absence of fraud, we review a Tax Tribunal decision for "misapplication of the law or adoption of a wrong principle."[8]  We consider the Tax Tribunal's factual findings conclusive if they are "supported by competent, material, and substantial evidence on the whole record."[9]  However, we review issues of statutory interpretation de novo.[10]

## III.  ANALYSIS

## A.  FORMULARY APPORTIONMENT IN MICHIGAN

The Due Process Clause of the Fourteenth Amendment imposes two requirements on a state's taxation of a business operating in interstate commerce: "a 'minimal connection' between the interstate activities and the taxing State, and a rational

---

[5] *Wheeler v Dep't of Treasury*, 297 Mich App 411, 420, 422; 825 NW2d 588 (2012).

[6] *Id.* at 425.

[7] *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 644 (2013).

[8] *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010).

[9] *Klooster v City of Charlevoix*, 488 Mich 289, 295; 795 NW2d 578 (2011), quoting *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994) (quotation marks omitted).

[10] *Klooster*, 488 Mich at 295.

relationship between the income attributed to the State and the intrastate values of the enterprise."[11] A state is not required to isolate a business's intrastate activities from its interstate activities; instead, "it may tax an apportioned sum of the corporation's multistate business if the business is unitary."[12] This latter concept, known as the unitary business principle, has been referred to as the "linchpin of apportionability."[13] It allows a state to "tax multistate businesses 'on an apportionable share of the multistate business carried on in part in the taxing state.'"[14]

---

[11] *Mobil Oil Corp v Comm'r of Taxes of Vermont*, 445 US 425, 436-437; 100 S Ct 1223; 63 L Ed 2d 510 (1980), citing *Moorman Mfg Co v Bair*, 437 US 267, 272-273; 98 S Ct 2340; 57 L Ed 2d 197 (1978).

[12] *Allied-Signal, Inc v Director, Div of Taxation*, 504 US 768, 772; 112 S Ct 2251; 119 L Ed 2d 533 (1992).

[13] *Mobil Oil*, 445 US at 438-439. Typically, controversies involving the unitary business principle and formulary apportionment feature the taxpayer raising constitutional objections to the state's taxation scheme. See *Mobil Oil Corp*, 445 US at 439; *Container Corp of America v Franchise Tax Board*, 463 US 159, 165-175; 103 S Ct 2933; 77 L Ed 2d 545 (1983); *F W Woolworth Co v Taxation & Revenue Dep't of New Mexico*, 458 US 354, 364-372; 102 S Ct 3128; 73 L Ed 2d 819 (1982); *ASARCO Inc v Idaho State Tax Comm*, 458 US 307, 322-330; 102 S Ct 3103; 73 L Ed 2d 787 (1982). Although there are no constitutional claims in this case, that does not render the basic constitutional principles underlying Michigan's formulary apportionment scheme irrelevant because the unitary business principle is the predicate for any formulary apportionment scheme.

[14] *Preston v Dep't of Treasury*, 292 Mich App 728, 733; 815 NW2d 781 (2011), quoting *Allied-Signal, Inc*, 504 US at 778. Until recently, the Department has taken the position that the unitary business principle does not apply to individual taxpayers, but now concedes that it does. Michigan adopted the Uniform Division of Income for Tax Purposes Act (UDITPA) when it enacted the Michigan Income Tax Act in 1967; UDITPA embodies the application of the formulary apportionment method in conjunction with the unitary business principle. See *Container Corp*, 463 US at 165, 170.

Our state has adopted formulary apportionment for individual taxpayers in the ITA.[15] Recognizing that Michigan is a formulary apportionment state, however, does not resolve the issue in this case because there are at least two different methods of applying the apportionment formula.[16] First, a state may use separate-entity reporting, which requires each entity with a nexus to the taxing state to be considered as a separate and distinct entity, regardless of whether it could comprise a unitary business with other entities.[17] Alternatively, a state may use combined reporting, which requires "each member of a group carrying on a unitary business [to] compute[] its individual taxable income attributable to activities in [the state] by taking a portion of the combined net income of the group through the utilization of combined apportionment factors."[18] The question in this case is whether the ITA prohibits individual taxpayers from using combined reporting.

---

[15] MCL 206.115. During the tax years at issue in these cases, Michigan used three factors—payroll, property, and sales—to apportion in-state and out-of-state business income for individuals. Michigan's apportionment formula changed as of January 1, 2012, with the enactment of Michigan's corporate income tax act, MCL 206.601 *et seq*. Michigan now apportions solely on a sales factor. See MCL 206.115(2), as amended by 2011 PA 38 and 2011 PA 178.

[16] See, generally, 2 Pomp, State and Local Taxation (6th ed), pp 10:43-10:48.

[17] *Media Gen Communications v SC Dep't of Revenue*, 388 SC 138, 142, 146; 694 SE 2d 525 (2010); *see also* Pomp, pp 10:42, 10:43.

[18] *Media Gen Communications*, 388 SC at 142. The combined income is not used for taxing purposes, but it is used to determine the "portion of income from the entire unitary business attributable to sources within [the state] that is derived by members of the group subject to [the state's] taxing jurisdiction." *Id.* See also Pomp, pp 10:42-10:43.

9

To answer this question, we turn first to the statutory language.[19] Our goal in interpreting a statute "is to give effect to the Legislature's intent, focusing first on the statute's plain language."[20] In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme.[21]

Under the ITA, an individual taxpayer's entire income is taxable in Michigan if it is derived solely from activity within the state.[22] However, if the income is derived from business activity taxable both within and without this state, the ITA requires an individual taxpayer to "allocate and apportion his net income . . . ."[23] The ITA further states that, "[f]or a resident individual, . . . all taxable income from any source whatsoever, except that attributable to another state under [MCL 206.111 to MCL 206.115] and subject to [MCL 206.255], is allocated to this state."[24] Section 115, the only one of these sections applicable here, provides: "*All business income*, other than income from transportation services shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and

---

[19] *Casco Twp v Secretary of State*, 472 Mich 566, 571; 701 NW2d 102 (2005).

[20] *Klooster*, 488 Mich at 296, citing *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

[21] *Sun Valley Foods Co*, 460 Mich at 237; *Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008).

[22] MCL 206.102.

[23] MCL 206.103.

[24] MCL 206.110(1).

10

the denominator which is 3."[25]  The ITA defines "business income" as "income arising from transactions, activities, and sources in the regular course of the taxpayer's trade or business . . . ."[26]

These provisions require an individual taxpayer with business income stemming from business activity both within and outside of the state to allocate and apportion "[a]ll business income" using the formula contained in MCL 206.115.  Section 115 is unambiguous—it plainly provides for the application of formulary apportionment. However, the statute does not require that any particular method of apportionment be used—it is silent on this question.  When, as here, "the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.  No further judicial construction is required or permitted."[27]  Although section 115 does not require or prohibit any particular method of applying the statutory formula, the phrase, "[a]ll business income . . . shall be apportioned[,]" is certainly broad enough to encompass either of the approaches advocated by the parties.

The Department argues that combined reporting is prohibited because it is not expressly authorized in the ITA for individual taxpayers, like it is for corporate taxpayers.[28]  However, the Department's argument is flawed.  The argument is self-

---

[25] Emphasis added.

[26] MCL 206.4(2).

[27] *Sun Valley Foods*, 460 Mich at 236.

[28] MCL 208.77.  During the tax years at issue, a combined return provision existed in the Single Business Tax Act, MCL 208.1 *et seq*., as replaced by 2006 PA 325, giving the

defeating because the ITA does not expressly authorize either method of reporting. Moreover, the provision of the corporate tax law applicable at the time of these returns, MCL 208.77(1), allowed for combined or consolidated returns by multiple corporate entities engaged in affiliated business that would otherwise be required to file separate returns. This is because Michigan imposes corporate taxes at the entity level; thus, absent a combined filing provision, unitary corporations would lack a means to file a single combined return. By contrast, income for individuals is already disbursed from the income-producing entities, aggregated by the taxpayer at the time of filing, and included on a single return. Thus, while the Legislature has included a combined return provision in the corporate tax code, such a provision is unnecessary for individual taxpayers, because they are already required to aggregate all their income on a single return.[29]

The Department also argues that it has always required the use of separate-entity reporting and has never approved combined reporting. Although the Department has certain rule-making authority, in this case, the Department has not promulgated a rule requiring separate-entity reporting for individual taxpayers.[30] To the extent that the

---

Department discretion to allow a corporation to file a consolidated or combined return.

[29] See MCL 206.315.

[30] The Department is free to promulgate administrative rules consistent with the ITA in accordance with procedures set forth in the Administrative Procedure Act, MCL 24.201 *et seq.* and MCL 205.3(b); see also MCL 206.471(1)(b) (providing that the Department may promulgate rules for "[t]he computation of the [income] tax"); MCL 206.471(1)(d) (providing that the Department may promulgate rules regarding the "ascertainment, assessment, and collection of the tax"). We do not address whether, or the extent to which, the Department may promulgate a rule requiring that an individual taxpayer use a particular method of reporting in the taxpayer's initial filing. We note, however, that any such rule would be subject to the current MCL 206.195, which gives the taxpayer the

12

Department has interpreted the statute to prohibit combined reporting, that interpretation is inconsistent with the broad scope of section 115; therefore, it "'conflict[s] with the indicated spirit and purpose of the legislature.'"[31]

Faced with a statutory provision that is broad enough to encompass both reporting options—but does not choose between them—the Department asks this Court to adopt its preferred methodology. However, we decline this invitation to engage in interstitial rule making because "[t]o supply omissions transcends the judicial function."[32] Instead, in the absence of a policy choice by the Legislature, we conclude that the ITA permits either reporting method.[33]

In sum, we reject the Department's position that the ITA requires separate-entity reporting. Instead, we hold that combined reporting is permitted by the ITA because it

right to petition for an alternative method if the initial filing required by the Department "do[es] not fairly represent the extent of the taxpayer's business activity in this state." MCL 206.195(1)(c).

[31] *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103; 754 NW2d 259 (2008), quoting *Boyer-Campbell Co v Fry*, 271 Mich 282, 296-297; 260 NW 165 (1935).

[32] *Iselin v United States*, 270 US 245, 251; 46 S Ct 248; 70 L Ed 566 (1926).

[33] Although not significant to the Court's analysis, we note that combined reporting ensures that "the substance of the business activities in the state [] control tax consequences, not the organizational structure of the business or the entities conducting those activities," Pomp, p 10-48; is "wholly consistent with, and a natural extension of, the apportionment method[,]" *Coca Cola Co v Dep't of Revenue*, 271 Or 517, 528; 533 P2d 788 (1975); and, perhaps for these reasons, is a "growing trend[.]" Pomp, p 10-44. However, the separate-entity approach is also consistent with formulary apportionment. See W. Hellerstein, *Income Allocation*, 12 Int'l Transfer Pricing J. 103, 105 (2005).

13

satisfies the clear statutory mandate that "[a]ll business income . . . shall be apportioned to this state . . . ."[34]

## B. THE ITA'S APPLICATION TO FOREIGN ENTITIES

Beyond our determination that an individual taxpayer can use combined reporting for flow-through business income, we also must consider whether this method could extend geographically outside the United States during the tax years of 1994 and 1995. In *Wheeler*, the Department argues that even if combined reporting is permitted under the ITA, it does not apply to a foreign entity that is unitary with a domestic business taxable in Michigan.[35]  Again, our analysis of this issue begins with the statute's text.[36]

The statutory basis for taxing out-of-state income is § 103, which states:

> Any taxpayer having income from business activity which is taxable both *within and without this state*, other than the rendering of purely personal services by an individual, shall allocate and apportion his net income as provided in this act.[37]

MCL 206.105 specifies when a taxpayer's income is taxable in another state and, thus, required to be allocated and apportioned under § 103.  It provides:

> For purposes of allocation and apportionment of income from business activity under this act, a taxpayer is taxable in another state if (a)

---

[34] MCL 206.115.

[35] We note that the United States Supreme Court has upheld the apportionment of business income of unitary foreign entities.  See, e.g., *Barclays Bank PLC v Franchise Tax Bd of Cal*, 512 US 298; 114 S Ct 2268; 129 L Ed 2d 244 (1994); *Container Corp of America*, 463 US 159 (1983).

[36] *Casco Twp*, 472 Mich at 571.

[37] MCL 206.103 (emphasis added).

in that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business or a corporate stock tax, or (b) that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not.[38]

Finally, MCL 206.20 defines "state" as "any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, *and any foreign country*, or political subdivision, thereof."[39] Taken together, these provisions require a taxpayer to allocate and apportion his income if "in [a foreign country] he is subject to a net income tax . . . or [a foreign country] has jurisdiction to subject the taxpayer to a net income tax . . . ."[40] Thus, unitary businesses that include foreign entities must allocate and apportion their income as provided by the ITA.[41]

We turn now to the ITA provisions dealing with business income to determine if the act otherwise excludes the income of a foreign entity for purposes of allocation and apportionment. Section 115, which deals with the apportionment of business income, states in pertinent part, "*All* business income . . . shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is 3."[42] Moreover, the apportionment factors themselves employ universal language when explaining the

---

[38] MCL 206.105.

[39] MCL 206.20 (emphasis added).

[40] MCL 206.105.

[41] MCL 206.103.

[42] Emphasis added.

scope of relevant business activity. MCL 206.119 states that "[t]he payroll factor is a fraction, . . . the denominator of which is the total compensation paid *everywhere* during the tax period."[43] Likewise, MCL 206.121 states that "[t]he sales factor is a fraction, . . . the denominator of which is the total sales of the taxpayer *everywhere* during the tax period."[44]

Nowhere in the ITA did the Legislature limit formulary apportionment to the domestic entities of a unitary business. In fact, to the extent that the Legislature discussed geographic limitations, it expressly required taxpayers with income taxable in a foreign country to allocate and apportion their income as provided in the act, which includes § 115's directive that *all* business income be apportioned using the apportionment factors.[45] Therefore, we reject the Department's argument that the ITA prohibits application of formulary apportionment to income from a foreign entity that is unitary with a domestic business.

Accordingly, we conclude that a unitary business with income from a business in a foreign country could be apportioned under the version of the ITA in effect during the tax years of 1994 and 1995.[46]

---

[43] Emphasis added.

[44] Emphasis added.

[45] See MCL 206.20, 206.103, and 206.105.

[46] The Legislature has limited the scope of the corporate income tax to domestic corporations in recent amendments. 2011 PA 38. The ITA now defines "unitary business group" as a "group of United States persons that are corporations, insurance companies, or financial institutions, other than a foreign operating entity . . . ." MCL 206.611(6). The Department argues that this shows that the Legislature only intended to include businesses within the United States. However, we are not persuaded that the

16

### C.  APPLICATION TO *MALPASS*

On appeal, the parties in *Malpass* do not dispute whether East Jordan and Ardmore were a unitary business.  The Court of Appeals, despite determining that the businesses had unitary characteristics, wrongly concluded that the ITA does not allow individual taxpayers with flow-through business income from separate legal entities to use combined reporting.[47]  For the reasons already stated, we hold that the ITA did not prohibit the Malpasses from first combining the income from their unitary flow-through entities and then apportioning it on the basis of the combined apportionment factors of East Jordan and Ardmore.  Therefore, we reverse the Court of Appeals' judgment in *Malpass* and reinstate the order entered by the Court of Claims granting summary disposition in favor of the Malpasses.

### D.  APPLICATION TO *WHEELER*

Unlike in *Malpass*, the parties in *Wheeler* dispute whether the Michigan and German entities were a unitary business.  The Tax Tribunal found that they were, and the Court of Appeals affirmed.  To consider business operations unitary, the United States

---

recent amendment limiting the scope of corporate income tax should affect our interpretation of the ITA for the tax years 1994 and 1995.

[47] *Malpass*, 295 Mich App at 270.  In its opinion, the Court of Appeals erroneously concluded that the ITA does not allow combined reporting.  *Id.* ("[N]othing in the ITA allows for combined-entity reporting."); *id.* at 272 ("There is no provision in the ITA that allows individuals to combine their business income from separate businesses and then use a combined apportionment formula on the total.").  However, the Court of Appeals reached this conclusion in cursory fashion without analyzing the relevant provisions of the ITA.  Instead, the Court of Appeals fixated on the corporate form of the business entities, even though the ITA makes no distinctions based on corporate formalities.

Supreme Court has held, "[T]here [must] be some sharing or exchange of value not capable of precise identification or measurement—beyond the flow of funds arising out of a passive investment or a distinct business operation—which renders formula apportionment a reasonable method of taxation."[48]  Accordingly, a unitary business exists when the income-producing companies have "functional integration, centralization of management, and economies of scale."[49]  Other United States Supreme Court decisions have added to these guideposts.[50]  The Court of Appeals relied on the following five factors in determining whether the Michigan and German entities were a unitary business: "(1) economic realities; (2) functional integration; (3) centralized management; (4) economies of scale, and (5) substantial mutual interdependence."[51]  We agree that these factors are appropriate guides for determining whether businesses are unitary. Moreover, as the United States Supreme Court held in *Container Corp*, "We need not decide whether any one of these factors would be sufficient as a constitutional matter to prove the existence of a unitary business."[52]  These factors are not exhaustive or

---

[48] *Container Corp*, 463 US at 166.

[49] *Mobil Oil*, 445 US at 438.

[50] See *F W Woolworth Co*, 458 US at 364-372; *ASARCO Inc*, 458 US at 319, 322-329; *Container Corp*, 463 US 159.

[51] *Wheeler Estate*, 297 Mich App at 422-423, citing *Holloway Sand & Gravel, Co, Inc v Dep't of Treasury*, 152 Mich App 823, 831; 393 NW2d 921 (1986).

[52] *Container Corp*, 463 US at 179-180.

exclusive.  Nor is any one factor dispositive.  Instead, a court should consider the totality of the circumstances when determining if businesses are unitary.[53]

Turning to the evidence offered by the parties, and aware of our limited review of the factual determinations made by the Tax Tribunal, we agree with that body's conclusion that the businesses here were unitary.  The Court of Appeals affirmed the findings of the Tribunal.  Because we agree with the thorough analysis of the Court of Appeals, we adopt its conclusions and holding in full:

> The first factor, economic realities, addresses whether the regularly conducted activities of the businesses in question are related.  *Holloway*, 152 Mich App at 832.  The record shows that the underlying businesses of Electro-Wire and TKG were identical because both were engaged in the manufacturing and assembling of electrical distribution systems.  Respondent claims that this is immaterial because the two businesses were engaged in the same underlying business before Electro-Wire purchased TKG.  However, there is no requirement under *Holloway* or related cases that potentially unitary businesses develop the same underlying activities collaboratively; the only requirement is that the underlying businesses be related to each other.

> The second factor, functional integration, concerns the extent to which business functions are blended to promote a unitary relationship.  Petitioners presented evidence that, before it was acquired by Electro-Wire, TKG was part of the Daimler Group.  Once Electro-Wire purchased TKG, however, this relationship was severed, leaving TKG without critical support services, which were assumed by Electro-Wire.  These services included direct management of TKG's business activities and support for component engineering, manufacturing and industrial engineering, cost estimating, business development, finance, and executive administration.

---

[53] See, generally, *Holloway Sand*, 152 Mich App at 835 (mentioning a "sixth factor" resulting from the taxpayer's treatment of capital gains from one of the businesses); see also *Container Corp*, 463 US at 179 (approving a California Court of Appeals reliance on "a large number of factors" to conclude that a domestic corporation and its foreign subsidiaries were unitary).

19

Respondents presented no rebuttal evidence, but set forth on appeal a list identifying ways in which Electro-Wire and TKG were not integrated. However, this belated argument is not persuasive because there is no requirement that businesses be 100 percent integrated in order to classify them as unitary.

The third factor examines the extent to which management was centralized across the potentially unitary business. Petitioners submitted unrebutted evidence that TKG's overall management decisions were centralized and directed by Electro-Wire managers in North America and that Electro-Wire hired and fired all TKG officers and managers. Again, respondent presented no rebuttal evidence, but alleges that Electro-Wire did not engage in day-to-day management of TKG. Again, however, the only requirement under *Holloway* is centralized management, not complete management.

The fourth factor looks for the presence of economies of scale. Petitioners presented unrebutted evidence of economic benefits generated by the combination of Electro-Wire and TKG, such as an expanded customer base, sharing of unique and proprietary processes, and improved financing terms. Respondent presented no evidence to challenge this, but argues that petitioners failed to show profits through bulk purchasing or improved allocation of resources. These are typically considered to be common economies of scale, but respondent does not explain how cheaper component parts, an expanded customer base, increasing economic diversification, and improved financing conditions are not also benefits derived from economies of scale.

The fifth and final factor considers whether substantial mutual interdependence exists. Petitioners submitted unrebutted evidence that acquiring TKG was essential for Electro-Wire to remain a supplier for Ford and that remaining a supplier for Ford was essential to Electro-Wire's survival. The Tax Tribunal found that Electro-Wire was dependent on TKG, but was unable to conclude whether or not TKG was similarly dependent on Electro-Wire, and thus resolved this factor partially in favor of petitioners.[54]

Based on the foregoing, we hold that the Tax Tribunal's factual finding that Electro-Wire and TKG were a unitary business was "supported by competent, material,

---

[54] *Wheeler Estate*, 297 Mich App at 423-425.

and substantial evidence on the whole record."[55] Because there was evidentiary support for all of the unitary factors, the Court of Appeals properly affirmed the Tax Tribunal's conclusion that Electro-Wire and TKG constituted a unitary business. Because we discern no limitations on the geographical boundaries to which the combined reporting could extend, the Wheelers could combine the profits and losses from Electro-Wire and TKG and then apportion, using the companies' combined apportionment factors.

## IV. CONCLUSION

In *Malpass*, we hold that the ITA permitted the individual taxpayers to combine the flow-through business income from the unitary business of East Jordan and Ardmore and then apportion, using the combined apportionment factors of the unitary business. Accordingly, we reverse the Court of Appeals and remand to the Court of Claims for reinstatement of the order granting summary disposition in favor of plaintiffs.

In *Wheeler*, we hold that the Court of Appeals properly determined that the Wheelers could combine their flow-through income from the unitary business of Electro-Wire and TKG. In so doing, we hold that the ITA contained no geographical limitations for the tax years of 1994 and 1995 and that combined reporting was proper even though the unitary business included an entity located in a foreign country. We affirm the

---

[55] *Klooster*, 488 Mich at 295.

21

judgment of the Court of Appeals, but we vacate Section III(A) of the Court of Appeals' opinion because that analysis is inconsistent with our analysis herein and relied on the Court of Appeals' erroneous decision in *Malpass*, which we reverse today.

David F. Viviano
Robert P. Young, Jr.
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
